### COMMISSIONER OF INTERNAL REVENUE v. TAYLOR.

### No. 7494.

Circuit Court of Appeals, Third Circuit.

Aug. 22, 1941.

MARIS, Circuit Judge, dissenting.

---

Michael H. Cardozo, IV, Sp.Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Ass't. to Atty. Gen., on the brief), for petitioner.

C. Brewster Rhoads, of Philadelphia, Pa. (John F. Headly, of Philadelphia, Pa., on the brief), for respondent.

Before BIGGS, MARIS and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The respondent taxpayer seeks to avoid the impact of a very recent decision of the United States Supreme Court.[1] In 1934 he created a trust for the benefit of his four nephews and nieces. By its terms it provides life estates in choses in action in the named children with powers of appointment and remainders over. The provisions relevant to the principal case read:

"(a) Trustees shall divide the principal of this Trust into four equal shares, said shares being represented respectively by the four children of Settlor's brother, John M. Taylor, to wit: Priscilla Taylor, Ellis Taylor, John M. Taylor, Jr., and Diana Taylor (each child representing one share), and thereupon:

"I. Trustees shall hold for the use and benefit of each child of John M. Taylor aforesaid the share of principal represented by such child, and shall pay the net income therefrom to such child for his or her life; provided, however, that the income which may become payable under the terms hereof to any minor child of said John M. Taylor shall be accumulated by Trustees for such child and paid over to such child when he or she shall attain the age of twenty-one years, unless in the opinion of Trustees, in their sole discretion, such income or ac-cumulated income should at any time during the minority of such child be needed for his or her proper education or support, in which event Trustees shall apply any part or all of such income and/or accumulated income, as Trustees in their sole discretion may deem expedient, for the education and support of such child during his or her minority.

\*   \*   \*   \*   \*   \*

"II. (c) Trustees shall hold the shares of minors in whom the principal shall have vested, during their respective minorities, and during such time shall apply the income therefrom for the education and support of the respective minors." Trust, Exhibit No. 2, Petitioner's brief, pp. 21, 22.

The respondent claims the statutory[2] deduction on these gifts. The Treasury has refused to allow it on the assertion that the gift comes within the exception rather than the rule. It calls the trusts "future interests in property" and relies on the Supreme Court case above cited in support thereof.

We think the Government's position is clearly correct. It is true that the life estate in the instant case vests immediately and the accumulation is thereafter, whereas in United States v. Pelzer[3] some accumulation (10 years' worth) occurs before the vesting. That fact may, as counsel contends, make the gifts in the latter case contingent. That difference is not, in our view, a distinction and for a simple reason. The respondent is trying, we think, to change the law by transposition and interpolation. He asks us to make the statute read "interests vested in the future." We find no warrant for so doing. The expression has two equally well-established and well recognized meanings among those learned in the law. Its earlier use is in the connotation of conveyancing. The books, texts and reports devote thousands of pages to intricate discussions of the various kinds of estates. The Restatement of Property alone has already devoted two volumes of 530 and 865 pages each to the codification of the law of future interests and we understand that a third similar volume is in preparation.[4]

---

1 United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913; cf. Ryerson v. United States, 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917; Welch v. Paine, 1 Cir., 120 F.2d 141; 17 Words and Phrases, Perm. Ed., Future Interests, p. 870, 1941 Supp. p. 70; Gift Tax, What Constitutes "Fu-ture Interests," 112 A.L.R. 1452; 124 A.L.R. 877.

2 26 U.S.C.A.Int.Rev.Acts, page 585.

3 312 U.S. 399, 61 S.Ct. 659, 661, 85 L.Ed. 913.

4 1 and 2 Restatement of the Law of Property (American Law Institute) §§

On the other hand, the phrase is employed in an entirely different sense. It is used in the grammatical interpretation of the adjective. The leading modern authority on the subject, Professor Simes, makes this quite clear in the first section of his text book. In speaking to the subject of "What Is a Future Interest," he says:

"The term 'future interests' is comparatively new in legal literature. Littleton, Coke, and Blackstone speak of reversions, remainders, and other specific interests, but do not use the term 'future interests.' Blackstone uses the term 'estates in expectancy.' 2 Blackstone's Comm. 163.

\* \* \* \* \* \*

"A future interest may be described as an interest in land or other things in which the privilege of possession or *of enjoyment* is *future* and not present. The one essential is the possibility of future enjoyment." 1 Simes, Law of Future Interests, § 1, pp. 2, 3 (italics ours).

To what extent this definition must have been in the legislative mind is manifest from the identical language of the Congressional Committee's Report cited by Mr. Justice Stone in United States v. Pelzer, supra.

"The term 'future interests in property' refers to any interest or estate, whether vested or contingent, limited to commence in possession *or enjoyment* at a *future* date. The exemption being available only in so far as the donees are ascertainable, the denial of the exemption in the case of gifts of future interests is dictated by the apprehended difficulty, in many instances, of determining the number of eventual donees and the values of their respective gifts." H. Rept. No. 708, 72d Cong., 1st Sess., p. 29; S.Rept.No.665, 72d Cong., 1st Sess., p. 41.[5] (Italics ours.)

The propriety of including the trust of the principal case within the definition is apparent in another aspect. Future interests are largely significant in the law because of a policy against the dead hand. The courts appraised the gift of prophesy and considered that one generation should not attempt economic control over another.[6] We need not contemplate here all phases of that general policy. The rule against perpetuities is the most famous example. It is not the only one. An entire chapter of Professor Gray's book is concerned with the policy of our exact trust.[7] That specific emanation had, as is known, its origin in the will of the notorious Peter Thellusson[8] and the so-called Thellusson Act[9] which expressed the English Parliament's distaste for what Peter had done. Fourteen American jurisdictions[10] have limited the period during which one may direct the accumulation of income. Among them happens to be Pennsylvania.[11] The provision just cited appears under the heading "Perpetuities" and it seems to us hardly consistent to argue that a trust whose regulation is required because of a policy against future interests should be called for taxing purposes by another name.

The Commissioner very fairly concedes that a stipulation based on an interpretation of then existing law necessitates the allowance of one $5,000 exclusion. The decision of the Board allowing the other three exclusions is reversed, and the cause is remanded with direction to reassess in accordance with this opinion.

MARIS, Circuit Judge (dissenting).

I am unable to agree that the interests which the nephews and nieces of the respondent received under his deed of trust were future interests within the meaning of Section 504(b) of the Revenue Act. Accordingly I think that the decision of the Board of Tax Appeals holding that the gifts in trust for the four nephews and

---

153–240; 3 and 4 Restatement of the Law of Property (American Law Institute) §§ 241–369.

[5] Cf. Article XI of Treasury Regulation 79, 1933 and 1936 editions.

[6] Accumulations of Income at Common Law, 54 Harvard Law Review 839, 841.

[7] Gray, The Rule Against Perpetuities, Chapter 20, Accumulations.

[8] Thellusson v. Woodford, 4 Ves.Jr. 227 (Ch. 1799), aff'd, 11 Ves.Jr. 112 (H.L. 1805); cf. Hargrave, The Thellusson Act (1842) 1–39; Barry, Mr. Thellusson's Will, 22 Virginia Law Review 416; 2 Simes, Law of Future Interests, § 588;

Leach, Cases on Future Interests, 2d Ed. 1940, 815.

[9] 39 & 40 Geo. III, c. 98 (1800).

[10] Accumulations of Income at Common Law, 54 Harvard Law Review 839; Simes, Statutory Restrictions on the Accumulation of Income, 7 University of Chicago Law Review 409; Accumulations—Direction to Accumulate Income from Large Estate for Perpetuities Period Held Invalid, 40 Columbia Law Review 1430; cf. Chaplin, Accumulation—Death of the Minor, 14 Cornell Law Quarterly 289.

[11] 20 P.S.Pa. § 3251.

nieces were gifts of present interests and allowing four $5,000 exclusions in respect of them, was right and should be affirmed.

The case, in my view, is clearly distinguishable from United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913, and Ryerson v. United States, 312 U.S. 405, 61 S.Ct. 656, 85 L.Ed. 917, upon which the petitioner relies. In the Pelzer case income was directed to be accumulated for ten years and then distributed to a class the members of which could not be ascertained until that time. In the Ryerson case insurance policies on the life of the donor were transferred in trust upon terms under which the beneficiaries were ascertainable only upon the happening of one or more uncertain future events, survivorship of one or more persons at the death of the donor. In neither case was there a definitely ascertained beneficiary of the income at the time of the gift or any provision for present distribution or use of that income.

In the case before us the respondent made a direct and absolute gift of present income to his nephews and nieces. In the case of each of the beneficiaries who was a minor, and all four of them were, he empowered his trustees to apply to the proper education and support of the minor during his minority so much of his income as was needed for that purpose and to accumulate the balance for distribution to him upon reaching his majority. While the accent in the respondent's deed is on the accumulation rather than the disbursement for the minor's education and support, the effect of the gift, it seems to me, was substantially the same as in the ordinary case of an absolute gift of income to a minor. The minor being under a legal disability to receive it directly, the income in every such case must be expended for his benefit either by a guardian appointed by a court for him or by a trustee designated to do so by the donor. In either case it becomes the fiduciary's duty to expend only so much of the current income as may be needed for the minor's proper education and support and to accumulate the balance until he comes of age.

It is suggested that the minors may receive the present benefit of only such income as the trustees in their sole discretion think proper to use for their education and support. But the discretion vested by the respondent in his trustees was not an arbitrary one. It was conferred upon them solely for the benefit of the minors and, if abused, would doubtless be subject to control by the appropriate tribunal. We must, therefore, assume for the purposes of this case that the minor beneficiaries here involved will receive present benefit from the respondent's gifts to them insofar as they may need it for their education and support. I, therefore, conclude that the gifts to them were present gifts within the meaning of the Revenue Act.

In my view the case is indistinguishable in principle from our case of Commissioner v. Krebs, 3 Cir., 90 F.2d 880. I think that Welch v. Paine, 120 F.2d 141, recently decided in the First Circuit, is distinguishable on its facts. Insofar as its reasoning may be extended to the facts of this case, however, I think it wrong and I should decline to follow it.