FONDREN et al. *v.* COMMISSIONER OF
INTERNAL REVENUE.

No. 88.   Argued December 11, 12, 1944.—Decided January 29, 1945.

*Mr. W. M. Cleaves,* with whom *Mr. E. E. Townes* was
on the brief, for petitioners.

*Mr. J. Louis Monarch*, with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clarke, Jr.* and *Mr. Sewall Key* were on the brief, for respondent.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

In 1935, 1936 and 1937 petitioner, Ella F. Fondren, and her husband, since deceased, created seven separate irrevocable trusts, each in favor of a grandchild of tender years; and each of them made gifts to each trust of corporate stock having the fair market value of $5,975. The donors made gift tax returns for 1937, claiming the statutory exclusion of $5,000 for each gift, and accordingly reported taxable gifts for each trust of $975. Gift taxes were paid on this basis.

The Commissioner made deficiency assessments, disallowing the exclusions on the ground that the gifts were of "future interests in property" within the meaning of the Revenue Act of 1932, c. 209, 47 Stat. 169, and Treasury Regulations 79 (1936 ed.).[1] The Tax Court upheld the Commissioner, the cases being consolidated for hearing and decision. 1 T. C. 1036. The Circuit Court of Appeals affirmed the Tax Court's decision, one judge dissenting. 141 F. 2d 419. Certiorari was granted, 323 U. S. 685, because of the importance of the question as

---

[1] The statute is as follows:

"Sec. 504. Net Gifts.

"(a) *General Definition.*—The term 'net gifts' means the total amount of gifts made during the calendar year, less the deductions provided in section 505.

"(b) *Gifts Less Than $5,000.*—In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year."

The pertinent part of the Regulation is quoted in the text below.

affecting the taxability of gifts made for the benefit of minor children and because of alleged or apparent conflict with decisions of other courts.[2]

The sole issue is whether the gifts were of "future interests" within the meaning of the statute and the regulation. The latter provides:

"Art. 11. . . . 'Future interests' is a legal term, and includes reversions, remainders, and *other interests or estates,* whether vested or contingent, and whether or not supported by a particular interest or estate, *which are limited to commence in use, possession, or enjoyment at some future date or time. . . ."* (Emphasis added.)

Upon the facts the issue turns on whether the interests acquired by the minor beneficiaries were "limited to commence in use, possession, or enjoyment at some future date or time." *Ryerson* v. *United States,* 312 U. S. 405; *United States* v. *Pelzer,* 312 U. S. 399.

Under these decisions it is not enough to bring the exclusion into force that the donee has vested rights. In addition he must have the right presently to use, possess or enjoy the property. These terms are not words of art, like "fee" in the law of seizin, *United States* v. *Pelzer, supra,* at 403, but connote the right to substantial present economic benefit. The question is of time, not when title vests, but when enjoyment begins. Whatever puts the barrier of a substantial period between the will of the beneficiary or donee now to enjoy what has been

---

[2] The petition alleged conflict with *Smith* v. *Commissioner,* 131 F. 2d 254 (C. C. A. 8th); *Sensenbrenner* v. *Commissioner,* 134 F. 2d 883 (C. C. A. 7th); and *Kinney* v. *Anglim,* 43 F. Supp. 431 (N. D. Calif.). Cf. also *Disston* v. *Commissioner,* 144 F. 2d 115 (C. C. A. 3d). The decision, one judge dissenting, overruled the prior decision in *Commissioner* v. *Taylor,* 122 F. 2d 714, cert. denied, 314 U. S. 699. A petition for writ of certiorari was filed in the *Disston* case on October 12, 1944, and now is pending.

given him and that enjoyment makes the gift one of a future interest within the meaning of the regulation.

Accordingly, it has been held that if the income of a trust is required to be distributed periodically, as annually, but distribution of the corpus is deferred, the gift of the income is one of a present interest, that of the corpus one *in futuro*. *Fisher* v. *Commissioner,* 132 F. 2d 383; *Sensenbrenner* v. *Commissioner,* 134 F. 2d 883. *A fortiori,* if income is to be accumulated and paid over with the corpus at a later time, the entire gift is of a future interest,[3] although upon specified contingency some portion or all of the fund may be paid over earlier.[4] The contingency may be the exercise of the trustee's discretion, either absolute or contingent.[5] It may also be the need of the beneficiary, not existing when the trust or gift takes effect legally, but arising later upon anticipated though unexpected conditions, either to create a duty in the trustee to pay over or to permit him to do so in his discretion.[6]

In the light of these principles and decisions, it is necessary to consider the terms of the trusts and the circum-

[3] *Welch* v. *Paine,* 120 F. 2d 141; *Commissioner* v. *Taylor,* 122 F. 2d 714, 715, cert. denied, 314 U. S. 699; *Commissioner* v. *Brandegee,* 123 F. 2d 58; *Commissioner* v. *Phillips' Estate,* 126 F. 2d 851; *Commissioner* v. *Gardner,* 127 F. 2d 929; *Welch* v. *Paine,* 130 F. 2d 990; *Commissioner* v. *Wells,* 132 F. 2d 405; *French* v. *Commissioner,* 138 F. 2d 254; *Roberts* v. *Commissioner,* 143 F. 2d 657; *Howe* v. *United States,* 142 F. 2d 310; *Hutchings-Sealy National Bank* v. *Commissioner,* 141 F. 2d 422; *Helvering* v. *Blair,* 121 F. 2d 945.

[4] *Ibid.*

[5] *Welch* v. *Paine,* 120 F. 2d 141; *Commissioner* v. *Taylor,* 122 F. 2d 714, 715, cert. denied, 314 U. S. 699; *Commissioner* v. *Brandegee,* 123 F. 2d 58; *Commissioner* v. *Phillips' Estate,* 126 F. 2d 851; *Commissioner* v. *Gardner,* 127 F. 2d 929; *Winterbotham* v. *Commissioner,* 46 B. T. A. 972; cf. *Ryerson* v. *United States,* 312 U. S. 405, 408.

[6] Cf. authorities cited note 3 *supra.*

stances in which the gifts were made. The trust instruments were substantially uniform except for variations in the names of the beneficiaries and, in case of death, their successors in interest. The trusts were irrevocable, the donors retaining no beneficial interest in the estates. Each instrument named the donor, W. W. Fondren, as trustee, and Ella F. Fondren, the other donor, as successor trustee. They reserved the rights as donors to remove any trustee, except Mr. Fondren, and to name successor trustees. Subject to these reservations and the directions set forth below, the trustee was given substantially complete control.

The trusts' stated purpose was "to provide for the personal comfort, support, maintenance, and welfare" of the grandchildren. But from the explicit recitals of the instruments,[7] as well as the evidence, including a stipulation, it is clear that the parents of each child were so situated that, when the gifts were made, they were fully able to provide for and educate him. And, from the same recitals, it is clear there was little reason to believe that any parent would not continue so until the child's majority. Accordingly, in each instance, the trust was to continue until the child should attain the age of thirty-five. Hence also the income was to be accumulated, except upon the contingencies specified below, and each beneficiary was to receive 25 per cent of the corpus and accumulations at age twenty-five, 33⅓ per cent at age thirty, and the remainder at age thirty-five.

Aware of the uncertainties of our world, however, the donors directed in Article 3:

". . . [T]he Trustee shall provide for the support, maintenance and education of our said Grandson, using only the income of said estate for the purpose if it be sufficient. If it be necessary to use any of the corpus of

---

[7] Cf. the recitals quoted in the text below.

the estate for that purpose *and in the judgment of the Trustee it is best to do so,* said Trustee *may make advancements out of the corpus* of said trust estate for such purpose for the benefit of our said Grandson.

"It is contemplated, however, that our said Grandson will have other adequate and sufficient means of support, and that it will not be necessary to use either the income or the corpus of the trust estate hereby created to properly provide for his education, maintenance and support; and, if the income from the trust estate be not needed for these purposes, then all of the income from said trust estate not so needed shall be by the Trustee passed to capital account of said trust estate, and shall be and become a part of said trust estate, it being our hope that all of the earnings and income of said trust estate during the period of this trust may be used to augment the trust estate and be delivered to our said Grandson at the periods herein provided for. *It is expressly provided, however, that our said Grandson shall be properly maintained,* educated and supported, and *if it be necessary to use all of the income and even all of the corpus* of the trust estate hereby created and all augmentations thereof, *it shall be the duty of the Trustee to see that this obligation shall be properly and reasonably discharged. . . ."* (Emphasis added.)

In view of the apparently conflicting terms of this article for use of the corpus, the exact scope of the trustee's discretion is by no means clear. But this need not be determined. Whether the disposition is in his judgment entirely, as the first clause indicates, or under the second is so only with reference to how much of the fund may be needed,[8] the trustee cannot act in any case to apply

---

[8] Petitioner presents the case as if no discretion whatever were vested in the trustee as to making the payments over. However, in the first provision for use of the corpus such use is authorized "if it be necessary . . . and in the judgment of the Trustee it is best to

24

corpus or income for the support, maintenance and education of the beneficiary until necessity arises.

Under the particular facts, this requirement is important in two respects. It is, as petitioners urge, a limitation upon the trustee's discretion. His power is not unconfined. Even though the existence and amount of need may be in the first instance for his determination, it does not follow that, need existing, the trustee arbitrarily could refuse to make the application. The case therefore is not one in which present enjoyment is dependent upon an exercise of the trustee's absolute discretion.

But this does not show, as petitioners seem to think, that the minor beneficiaries had, at the moment of the gift, a present right of enjoyment. It rather shows the contrary—that their right was not absolute and immediate, but was conditioned, during minority and afterward until the times specified for distribution, upon a contingency which might never arise. That contingency, by the explicit terms of the trust, was the existence of need which was then nonexistent and, in the stated contemplation of the donors, was not likely to occur in the future, at any rate during the child's minority. The circumstances surrounding the donors and the donees confirm these recitals. The case is one therefore in which the gift, if presently vested, made enjoyment contingent upon the occurrence of future events, not only uncertain, but by the recitals of the instrument itself improbable of occurrence. The gifts con-

---

do so"; in the other provision the duty imposed, "if it be necessary to use all of the income and even all of the corpus," is one "to see that this obligation shall be properly and reasonably discharged." If the first clause limits the second, the trustee's discretion is bounded only by what he thinks "it is best to do," and in any event under the latter his duty is only to see that the obligation is "properly and reasonably" discharged. Presumably also the trustee would have some room for judgment on whether particular circumstances would amount to necessity and particular measures would be required to meet it.

sequently were of "future interests in property" within the meaning of § 504 (b).

Petitioners' contrary argument, apart from the misconception that legal vesting of the interest without more satisfies the statute,[9] rests chiefly upon considerations arising from the legislative history and from the fact that gifts for the benefit of children under legal disability to manage their own property must make provision for its control by trustees or otherwise.

Special stress is placed on the fact that each gift was made to or for the benefit of a specifically named beneficiary then *in esse* and for a definite amount. As the *Pelzer* opinion noted, 312 U. S. at 403, the committee reports recommending the legislation stated: "The exemption being available only in so far as the donees are ascertainable, the denial of the exemption in the case of gifts of future interests is dictated by the apprehended difficulty, *in many instances*, of determining the number of eventual donees and the values of their respective gifts."[10] (Emphasis added.) And in the *Pelzer* case the Court found that the gift involved these difficulties, as well as postponement of enjoyment to the happening of a future uncertain event, since the right of enjoyment was contingent in any event upon the beneficiaries' surviving the ten-year period specified for accumulation of income. 312 U. S. at 404.

---

[9] Several of petitioners' statements of their contentions ignore the contingency upon which enjoyment is deferred in this case, namely the occurrence at some future time of the need or necessity of the beneficiary which would bring the trustee's power or duty to provide for support or maintenance from the trust fund into play. It is not necessary to note these contentions specifically further than to say, in addition to what has been said already, that they assume as the answer to it the very issue in the case.

[10] H. Rep. No. 708, 72d Cong., 1st Sess., 29; S. Rep. No. 665, 72d Cong., 1st Sess., 41.

Both conclusions would seem applicable in this case, the chief difference being that the period of postponement, which the beneficiaries must survive before enjoyment begins, is indefinite rather than for a specified time. That is true in any case where the length of the period is governed by a contingency. But the regulation, adopted almost in the language of the committee reports,[11] does not limit the denial of the exemption to instances where the deferment of enjoyment is at all events for a period which is definite and certain. Cf. *Commissioner* v. *Glos,* 123 F. 2d 548, 550. Clearly the statute is not to be applied differently, to grant or deny the exemption, if there is postponement, merely because in one case the period is under any eventuality for a certain, specified length of time, whereas in another it is of uncertain or indefinite length. The important thing is the certainty of postponement, not certainty of the length of its duration.

Furthermore, if there is postponement, the exemption is denied whether or not the administrative difficulties anticipated in the committee reports inhere in the particular gift. *Commissioner* v. *Glos, supra; Welch* v. *Paine,* 120 F. 2d 141. Those reports specifically state these difficulties are present "in many instances." But they also state that "the term 'future interests in property' refers to *any* interest or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date." [12] They thus contemplate, as does the regulation framed in similar terms, vested as well as contingent interests and estates. And there is nothing to indicate that gifts to specified donees *in esse* and in definite amounts are to be excluded from the denial, if by the terms of the gift enjoyment is deferred to a future time. Again, the crucial thing is postponement of enjoyment, not the fact that the

[11] Cf. text at note 12 *infra.*
[12] Cf. note 10 *supra.*

beneficiary is specified and *in esse* or that the amount of the gift is definite and certain.[13]

The considerations, which petitioners advance to support their position, from the minority of the beneficiaries and their consequent legal disability to manage and control their property are intermingled with others relating to the motives of the donors in making the gifts. It is said that their purpose was to provide for the "comfort, support, maintenance and welfare," including education, of the grandchildren; that the latter were incapable of taking over the management and control of the property; that accordingly it was necessary for some arrangement to be made for vesting this power in trustees or others capable of exercising it; that the trustees were given no power to withhold either income or corpus in case of need; and consequently the whole fund became available to the beneficiary for his maintenance "immediately upon the consummation of the gift," so that he was vested at once with the right of present enjoyment as fully as any child of tender years could be and in no way differently, taking account of his disability, than any owner of property by title in fee simple.

---

[13] The absence of these factors is relevant as showing the more clearly that postponement exists and therefore the exemption does not apply. Their presence does not show that there is no postponement or that the exemption applies. The administrative difficulties relating to these matters "in many instances" were reasons for denying the exemption. They do not and were not intended to encompass the full scope of the denial. As the statute extended the exemption "in the specified amount, to all gifts, whether large or small, 'made to any person,'" *Helvering* v. *Hutchings*, 312 U. S. 393, 397, so it denied the exemption to all gifts, whether large or small, vested or contingent, made to any person, whether specified and *in esse* or ascertainable only in the future, and whether for a specific or a presently unascertainable amount, if the gift is one of a "future interest in property," that is, one as to which enjoyment is postponed to some future time.

So far as the argument turns on the motive of the donors, it may be answered that the statute and the regulation make no such test. If motive has bearing, it is only by reason of its effect upon the element of time and whatever relation may be given, by the particular terms of the gift, to it and the disclosing of a purpose to provide for or against immediate enjoyment. The statute in this respect purports to make no distinction between gifts to minors and gifts to adults. If there is deferment in either case the exemption is denied. Consequently in this case the donors' laudable desire to make provision for their grandchildren in case of future need cannot nullify the deferment which the recited absence of present need, coupled with the terms of the trust, brought about. Again, contingency of need in the future is not identical with the fact of need presently existing. And a gift effective only for the former situation is not effective, for purposes of relief from the tax, as if the latter were specified, whether the donee is an adult or a minor.

Upon the facts, furthermore, the trusts hardly can be taken as designed primarily for the periods covered by the children's minority. They did not terminate with the ending of that period. The graduated scale of payments, beginning at age twenty-five and ending at thirty-five, together with the prohibition of payment earlier except in case of necessity, shows principal concern for a period of adult life. And, from the fact that this would be the period when the grandchildren normally would be assuming family responsibilities of their own, the inference well might be drawn that the chief purpose was to give aid and some security in that time. The contingent provision, in case of earlier need, cannot be taken therefore to represent the donors' primary concern as expressed in the instruments. Cf. *Fisher* v. *Commissioner*, 132 F. 2d 383, 386.

But, whether so or not, in the particular circumstances that need was but a contingency to be realized, if at all, in the future. And, until realized, the contingency stood squarely in the way of any child's receiving a single dollar from the fund.

Finally it is urged that unless these gifts are to be taken as conferring the right to immediate enjoyment, no gift for the benefit of a child of tender years can be so regarded since in any such case "some competent person must be the primary judge as to the necessity and extent of reasonable requirements of the beneficiary." The argument is appealing, in so far as it seeks to avoid imputing to Congress the intention to "penalize gifts to minors merely because the legal disability of their years precludes them for a time from receiving their income in hand currently." Cf. *Disston* v. *Commissioner*, 144 F. 2d 115, 119. But we think it is not applicable in the facts of this case, since by the terms of the trusts and the facts recited in the instruments none of the fund, whether income or corpus, could be applied immediately for the child's use or enjoyment.

It does not follow, as petitioners say, that if the exemption does not apply in this case it can apply in no other made for a minor's benefit. Whenever provision is made for immediate application of the fund for such a purpose, whether of income or of corpus, the exemption applies. Whether, in the case of a gift requiring such an application of the income, but providing for retention of a corpus no more than reasonably sufficient to produce the income required for this purpose and to insure its continued payment during minority, the donation would fall within the exemption, as to corpus as well as income, is a question not presented on this record and therefore not determined.

The regulation has received the construction now reaffirmed with substantial consistency. The statute, with

the meaning thus settled, has been reenacted by Congress.[14] The construction should be followed until Congress sees fit to change it.

The judgment is

*Affirmed.*

---

[14] Congress withdrew the exclusion, as to gifts in trust, in the Revenue Act of 1938, c. 289, 52 Stat. 447, § 505, amending § 504 (b) of the 1932 Act.   But it was restored, though reduced to $3,000, by the Revenue Act of 1942, c. 619, 56 Stat. 798, § 454.