CELIA GOLDSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53136, 56173. Filed June 12, 1956.

*Joseph Shefner, Esq.*, for the petitioner.
*Claude R. Sanders, Esq.*, for the respondent.

509

510

OPINION.

BRUCE, *Judge:* Under the terms of an agreement executed on December 27, 1949, petitioner Celia Goldstein and her husband, Harry Goldstein, now deceased, transferred certain shares of stock in a family-owned plumbing supply corporation to Joseph Shefner and Harry Gainsley. The announced purpose of the agreement is to preserve the corporation for two of the Goldstein's children, Bernard and Jerome, who have been active in the business, but at the same time to provide a means by which the other three Goldstein children can obtain in money the book value of three-fifths of all of the shares of the corporation. To accomplish this purpose, the agreement provides that at the close of each fiscal year the corporation shall purchase so many of the shares in the hands of Shefner and Gainsley as the corporation shall determine, but no more than $3,000 worth of shares in any one year while either petitioner or her husband is alive. The proceeds from the sale of such stock to the corporation are to be paid over to the other three children in equal shares, and any dividends received on the stock held by Shefner and Gainsley are to be credited toward the purchase of more shares. The agreement further provides that if both petitioner and her husband die, Bernard and Jerome will purchase any remaining stock held for the benefit of the three remaining children. If the corporation or the sons fail to purchase shares as provided in the agreement, Shefner and Gainsley are empowered to liquidate the corporation and to apply any undistributed surplus toward the purchase of the shares.

The obvious result intended by this arrangement is an eventual transfer of all of the capital stock to the sons actively engaged in the business. The agreement was drawn up, however, so that shares of stock owned by the parents will be transferred to Shefner and Gainsley, as trustees, for the benefit of the three children who are not active in the business. As the stock is purchased from the trustees and retired by the corporation, the amounts received are then turned over to the three beneficiaries. The agreement further contemplates that

petitioner will from time to time place additional shares of stock in the hands of the trustees, presumably until the entire capital stock of the corporation has been transferred. In accord with this plan, petitioner placed $21,919.38 worth of stock in the hands of the trustees in 1950, and $8,190.30 worth in 1951. In her gift tax returns for those years, petitioner proceeded on the theory that each gift of stock was in fact a gift of a one-third interest to each of the beneficiaries named in the 1949 agreement. Therefore, in her returns for 1950 and 1951, petitioner excluded $3,000 for each child, or a total exclusion of $9,000 for each year. Respondent disallowed the $9,000 exclusion for both years on the ground that the gift of stock to the trustees for the benefit of the three children was a gift of future interests.

Petitioner first contends that the 1949 agreement is not a trust but is a "buy and sell" agreement under which the "trustees" act as a mere conduit for the transfer of cash to the three named children. This contention is without merit.

A trust has been defined as a "fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement, Trusts sec. 2; 1 Scott, Trusts sec. 2.3. "Manifestation of intention" means the external expression of intention as distinguished from undisclosed intention. Restatement, Trusts sec. 4. The trust instrument itself is the best evidence of "manifestation of intention," but an express trust may be created even though the parties do not call it a trust, if what is done has the essentials of a trust. 1 Scott, Trusts sec. 2.8.

The 1949 agreement in issue here has every characteristic of a bona fide trust. Petitioner and her husband, referred to in the agreement as settlors, entered into an agreement with Joseph Shefner and Harry Gainsley, referred to in the agreement as trustees, whereby the settlors transferred shares of the capital stock of the family corporation to the trustees for the benefit of three of the settlors' children. By the express terms of the instrument, the trustees were subjected to certain duties with respect to this stock, which included the paying over to the beneficiaries of proceeds received from the corporation upon the purchase and retirement of shares of stock held by the trustees. The trustees were further directed to credit any dividends received by them with respect to the stock held in trust toward the purchase of such shares. Other powers were given to the trustees, all of which dealt with the property transferred to them for the benefit of the settlors' children. The trustees have fully carried out all of the duties imposed upon them. We therefore hold that the 1949 agreement created a valid trust.

The primary issue is whether the gifts of stock to the trustees in 1950 were gifts of future interests within the meaning of section 1003 (b) (3), Internal Revenue Code of 1939.[1] That section provides for maximum annual exclusion of $3,000 in the case of gifts other than of future interests in property made after 1942.

Congress has defined the term "future interests in property" as "any interest or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date." H. Rept. No. 708, 72d Cong., 1st Sess., p. 29 (1939–1 C. B. (Part 2) 478) ; S. Rept. No. 665, 72d Cong., 1st Sess., p. 41 (1939–1 C. B. (Part 2) 526). The term "includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession, or enjoyment at some future date or time." Regs. 108, sec. 86.11.

Whatever puts the barrier of a substantial period between the will of the beneficiary or donee presently to enjoy what has been given him and that enjoyment makes the gift one of a future interest within the meaning of the regulation. *Fondren* v. *Commissioner*, 324 U. S. 18 (1945). Thus, if enjoyment is postponed by reason of a trust provision that the trustee may, in his discretion, pay income from trust property to the donee or accumulate it until a specified contingency occurs, the income interest is a future one. *Welch* v. *Paine*, (C. A. 1, 1942) 130 F. 2d 990; *Commissioner* v. *Brandegee*, (C. A. 1, 1941) 123 F. 2d 58. Even if the income is required to be distributed by the trustee, but distribution of trust corpus is postponed, the gift of corpus is a future interest. *Fisher* v. *Commissioner*, (C. A. 9, 1942) 132 F. 2d 383, affirming 45 B. T. A. 958; *Sensenbrenner* v. *Commissioner*, (C. A. 7, 1943) 134 F. 2d 883, affirming 46 B. T. A. 713.

By the terms of the trust agreement involved here, the trustees are directed to pay over the proceeds derived from the sale of shares of stock held in trust to the three named beneficiaries "forthwith." Any dividends declared upon the trust stock are to be credited toward the purchase of more trust shares. However, the corporation alone may purchase the shares of stock held by the trustees. And if the corporation complies with the statutes of Minnesota governing retirement of its stock, it may purchase so many shares as *it shall determine.*

---

[1] Subsection (b) (3) which was added to section 1003 of the Internal Revenue Code of 1939 by section 454 of the Revenue Act of 1942, provides :

SEC. 1003. NET GIFTS.

(b) EXCLUSIONS FROM GIFTS.—

   \*      \*      \*      \*      \*      \*      \*

   (3) GIFTS AFTER 1942.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

Clearly the trustees have no discretion to delay payment of proceeds received from the sale of trust stock. But the trustees are subject to the control of the corporation, for it and it alone has the power to determine whether or not the trust stock will be purchased and retired. If the corporation chooses not to purchase any stock in a given year, the trustees cannot distribute any of the trust corpus to the beneficiaries because only the "proceeds derived from the sale" of trust shares are to be paid out. Nor does the trust agreement contain any limitation upon the corporation's discretion in this regard. The corporation is not required to purchase any number of shares each year and there is no provision whereby any of the beneficiaries or the trustees may make demand upon the corporation to retire any of the stock held in trust. Even if a provision for demand had been included in the trust instrument, the corporation may not purchase a single share of stock without first complying with the Minnesota law governing a corporation's purchase or redemption of its own shares,[2] a contingency that might further postpone the donees' enjoyment of the property.

Moreover, the trustees cannot, under the terms of the trust, sell the stock to any purchaser other than the corporation. The agreement expressly provides that if the corporation fails or refuses to purchase any shares from the trustees, then the trustees have discretion to take such steps as may be necessary to liquidate and dissolve the corporation and to apply any undistributed surplus toward the purchase of such shares. Obviously, if the surplus is not sufficient to cover the book value of the remaining shares in the hands of the trustees, the beneficiaries will never receive the full enjoyment of the trust property. And if the corporation ceases doing business, becomes bankrupt, or enters receivership, the agreement further provides that the beneficiaries will receive as their shares of the trust property only the proceeds remaining for distribution among all of the stockholders of the corporation. Since the interests of the beneficiaries are securely tied to the success or failure of the corporation, it is clear that they have no right to the immediate enjoyment of the trust property.

In *Willis D. Wood*, 16 T. C. 962, it was held that if discretion to determine enjoyment and use of a gift is placed in someone other than the trustee, the donee's interest is a future one. The interests of the three Goldstein children under the 1949 trust were at all times

---

[2] Minn. Stat. sec. 301.22 (1953), provide:

Subd. 6. **Purchase or redemption of shares of own stock.** A corporation may purchase or redeem shares of its own stock, whether pursuant to contract previously made or otherwise, only as follows:

(1) Out of earned surplus;

(2) Out of paid-in surplus; provided, that, if the corporation has outstanding shares entitled to preferential dividends or to a preference upon liquidation, then only such shares may be purchased or redeemed out of paid-in surplus.

subject to the discretion of the corporation. Unless it complied with State law and determined to purchase trust stock, the trustees were powerless to make any distribution. Thus, the unbridled discretion of the corporation placed a barrier "between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment." *Fondren* v. *Commissioner, supra*. Accordingly, we hold that petitioner's gifts of stock to the trust in 1950 and 1951 were gifts of "future interests" not entitled to the annual exclusion. *Commissioner* v. *Kempner*, (C. A. 5, 1942) 126 F. 2d 853, affirming Tax Court Memorandum Opinion dated Feb. 28, 1940; *Commissioner* v. *Sharp*, (C. A. 9, 1946) 153 F. 2d 163, affirming 3 T. C. 1062, cited by petitioner, are distinguishable. In those cases neither the trustee nor anyone else had discretion to postpone the enjoyment of the gift property.

Gifts of stock in 1949 from petitioner and her husband to the trust have been held to be gifts of future interests to the three children-beneficiaries. *Shefner* v. *Knox*, 131 F. Supp. 936 (1955). We reach the same conclusion as to the gifts of stock made by petitioner to the trust in 1950 and 1951.

*Decision will be entered for the respondent.*

