George Fischer v. Commissioner.
Fischer v. Commissioner
Docket No. 73293.
United States Tax Court
T.C. Memo 1960-62; 1960 Tax Ct. Memo LEXIS 225; 19 T.C.M. (CCH) 327; T.C.M. (RIA) 60062; March 31, 1960
Carl F. Nitto, Esq., 663 Main Avenue, Passaic, N.J., for the petitioner. William F. Fallon, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency of $2,025 in gift tax for 1954. The sole issue is whether gifts made by the petitioner were gifts of a present interest which will support three annual stautory exclusions of $3,000 under section 1003(b)(3) of the Internal Revenue Code of 1939. All of the facts have been stipulated and are found accordingly. Attached to the petitioner's gift tax return was a copy of an agreement dated June 1954 according to which the petitioner agreed to purchase the property here in question. The property was described in the agreement as Parcel A and Parcel B, both located on Staten Island, Richmond County, *226 New York. The purchase price was $508,750, payable $20,000 on signing the contract and $143,750 on delivery of the deed. Parcel A was to be subject to a first mortgage of $345,000 to be secured by the seller prior to sale. The mortgage was to bear interest at 4 1/2 per cent per annum and was to be amortized by quarterly payments of $6,460 each to be applied first to interest and the balance to principal. The sellers represented in the agreement that the rentals were as shown on a schedule annexed and that the annual expenses were as follows: Taxes (1954)
$13,633.15
Fuel
4,599.97
Water and Sewerage
1,048.00
Electricity
699.54
Insurance
1,203.98
Superintendent - h3,420.00
Apartment and $185.00 The schedule of rents stated that total annual rental was $80,100, consisting of rents varying from $90 to $140 on 60 apartments, and 35 garages at $10. The following paragraph was in the agreement: "The sellers have not made and do not make any representations as to the physical condition of the premises; the purchaser agrees to take the premises 'as is'." The agreement provided that the deed would be delivered upon receipt of the payments at a stated place on *227 September 8, 1954. A copy of a "Statement of Closing Title", attached to the gift tax return, indicates that settlement took place on September 1, 1954. The transfers in question were in trust by the petitioner of real property for the benefit of his three daughters, Ruth, Lorraine and Georgine, each of whom was at least 21 years of age. All resided in New Jersey. The petitioner executed a trust agreement on August 26, 1954, in which he purported to transfer Parcels A and B above-mentioned in trust for the benefit of his three daughters. The apartments included some equipment such as stoves and refrigerators. The trustees named were Georgine and the husbands of Ruth and Lorraine. The "net income" from the trust property was to be paid in equal shares quarterly to the three daughters as long as each lived and thereafter to her issue, or in the absence of issue, to the surviving daughters or their issue. The corpus of the trust was to be distributed equally to the daughters 15 years from the date of the trust, or if any daughter died before that distribution, her share was to be held in trust for her surviving issue until the latter became 21 years of age. The trust provided that *228 the petitioner should have no power to revoke, alter or amend the trust instrument or exercise any power over the trust estate. Nevertheless, the petitioner and the trustees entered into an agreement dated December 2, 1954, to define more clearly the meaning of the term "net income" as used in the original trust instrument. The definition in the new agreement was "such cash net income as equals the excess of rents and other income to the trust corpus over and above disbursements and operating expenses and monies paid for amortization of any mortgages involved." The trustees were given the absolute discretion and authority to purchase, sell or exchange trust assets; to make investments which did not produce income or hold uninvested property for any period of time; to charge any expenses or costs against principal or income to the extent they could legally do so; to borrow such sums of money as they deemed advisable for any purpose they deemed desirable, including the refinancing of real estate improvements; to pledge any trust property as security; and to improve, alter or rebuild any of the improvements on the trust real estate. The petitioner reserved the right to transfer additional *229 property to the trust. Paragraph "TENTH" of the trust indenture provided that the net income of the trust was not to be paid to any beneficiary if she had become bankrupt or insolvent or had alienated her interest in the trust by any means, and in any such case, that beneficiary's interest terminated and her former share of the income was to be used thereafter by the trustees in the amounts, and as, they deemed advisable for her support and maintenance or for the support and maintenance of her husband and children and any excess was to be distributed pro rata among the other beneficiaries. The petitioner reported in his gift tax return for 1954 $157,403.43 as the value on August 26, 1954, of the gift. He subtracted $9,000 as exclusions based on present interests transferred to each donee and $30,000 as a specific exemption, leaving a net taxable gift of $118,403.43. The Commissioner in determining the deficiency disallowed the three exclusions totaling $9,000, explaining that none was allowable under the deed of trust. The Declaration of Trust dated August 26, 1954, was apparently recorded on September 29, 1954. It recites in a schedule attached to it that deeds for the property *230 dated August 24, 1954 were recorded on August 26, 1954 in the Richmond County Clerk's office. There is no explanation in the record of how a deed was recorded on August 26, 1954, when the deed was not to be delivered until the settlement date. September 8, 1954, was agreed upon in the contract as the settlement date but apparently the settlement took place on September 1st. Both parties assume that a valid transfer in trust of the property was made and the Court will assume as much. The daughters were given no immediate right to the corpus. Their interest therein was "limited to commence in * * * possession * * * at some future date or time." Fondren v. Commissioner, 324 U.S. 18; United States v. Pelzer, 312 U.S. 399; Regulations 108, section 86.11. Their interest as to corpus was clearly a gift of a future rather than of a present interest. The rights given by the petitioner to his three daughters to receive the income from the trust were gifts of present interests. The difficult question here is - what was the value of those present interests. Net income is defined in the trust instrument as the gross income of the trust property minus expenses and mortgage *231 amortization. The agreement which the petitioner entered into to buy the properties would indicate that the annual expenditures of the trust necessary in operating the properties would amount to at least $50,444.64. The record does not justify a finding that the income from the property would exceed those expenditures or the amount, if any, by which the probable income might be expected to exceed the probable expenditures. The gift tax return of the petitioner contains a statement: "Also attached hereto and made a part hereof as if herein recited verbatim is a certified copy of Contract between gift donor and his grantor." The copy attached to the exhibit does not indicate that it is certified. Attached to and referred to in that contract is a rider and annexed to the rider is a schedule. The rider contains the following: "The sellers represent that the rentals as stated on the annexed schedule herein are accurate and true." The schedule would lead one to believe that the amounts mentioned are the rental asked for each of the 60 apartments and 35 garages. The record contains no evidence of the extent to which the apartments and the garages were actually rented at the time of the transfer. *232 Nor is there any other evidence of the probable income from the property. The property transferred was heavily mortgaged. The trust instrument permitted the trustees to acquire other mortgages, to acquire other properties, to borrow on other mortgages and to remodel and alter any of the improvements on the real estate owned by the trust. There were a number of contingencies which might reduce the gift of the income or defeat those gifts entirely. The record does not justify a finding that the gifts of income to the daughters had a value of $9,000 or even that they had any value. Since the amount of net income which each daughter was to receive cannot be estimated from the record with reasonable certainty, the Commissioner's determination cannot be disturbed. Cf. William Harry Kniep, 9 T.C. 943, affd. 172 F. 2d 755; Sylvia H. Evans, 17 T.C. 206, affd. 198 F. 2d 435; Fondren v. Commissioner, supra.
Decision will be entered for the respondent.