T. Ree McCOY, Nancy McCoy, Appellants,

v.

UNITED STATES of America, Appellee. (Two Cases)

Nos. 85–1997(L), 86–3014.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1986.

Decided Oct. 7, 1986.

Richard E. Halperin (Shea & Gould, Harold P. Threlkeld on brief), for appellants.

William A. Whitledge, Tax Div., U.S. Dept. of Justice (Roger M. Olsen, Acting Asst. Atty. Gen., David English Carmack, Michael L. Paup, Vinton DeVane Lide, U.S. Atty. on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Plaintiffs T. Ree McCoy and Nancy McCoy[1] appeal from the district court's entry of summary judgment, denying them a refund of income taxes paid for the years 1978 and 1979. The McCoys had claimed that they were entitled to deductions for advance royalties paid in those years pursuant to mineral subleases entered into in 1978, but the district court ruled that, pursuant to the current version of Treasury Regulation (26 C.F.R.) § 1.612–3(b)(3), the McCoys were not entitled to the claimed deductions.

On appeal, the McCoys do not contest that the claimed deductions are not allowable under the current regulation, but they argue that the current version of the regulation, promulgated in 1977, is invalid under the "legislative reenactment doctrine." Finding no merit in this contention, we affirm the judgment of the district court.

I.

Mr. McCoy owned an 11.315 percent interest in Midvale Associates, a limited partnership, which entered into subleases for mineral rights in two coal-producing properties in West Virginia. Both subleases provided that Midvale, as sublessee, was to pay the sublessor "advance minimum royalties." One sublease provided for advance royalties to be paid at the rate of $588,000 for 1978 and $516,000 for each year thereafter; the other provided for an advance royalty of $204,000 for 1978 and $180,000 for each year thereafter.[2] Substantial portions of the advance royalties were payable by nonrecourse promissory notes, security for which was the mineral rights that were the subject of the subleases. *See supra* note 2. No coal was ever mined from either of the properties.

Mr. McCoy claimed as deductions his share of the advance minimum royalties allegedly paid under the subleases for the years 1978–79. The Internal Revenue Service disallowed the deductions and asserted deficiencies in the McCoys' income taxes of $66,706 in 1978 and $61,620 in 1979. The McCoys paid these amounts and then sued

1. Nancy McCoy is a party to this lawsuit by virtue of having filed joint federal income tax returns for the years in question with her husband, T. Ree McCoy.

2. The first sublease required Midvale to pay royalties for 1978 of $68,750 in cash upon execution of the sublease and a $519,250 recourse promissory note due December 31, 1980. For 1979, Midvale was to pay $5,000 cash on December 31, 1979 and a nonrecourse promissory note of $511,000 due December 31, 1980. Minimum royalties for any extension of the sublease, in the amount of $9,923 per week, were payable with nonrecourse notes. The other sublease

required Midvale to pay royalties for 1978 of $41,250 in cash and a recourse promissory note of $162,750. For 1979 and each year thereafter during the term of the sublease, Midvale was required to pay cash of $5,000 and a nonrecourse note of $175,000. In each sublease the recourse notes became nonrecourse notes upon mining and sale of 20,000 tons of coal by Midvale. Security for the nonrecourse note was the right to recover the subleased premises. All promissory notes were nonnegotiable. In the event of default by Midvale in the payment of royalties, the sublessor had the right to take possession of the subleased properties.

for refunds in the amounts of $66,763 for 1978 and $7,874 for 1979. The district court granted summary judgment for the government on the issue of deductibility of advance royalties, denying the refunds claimed on that basis. The parties settled their differences as to other deductions challenged by the government, and the district court's final order therefore granted the McCoys a partial refund. In granting summary judgment, the district court relied on the current version of 26 C.F.R. § 1.612–3(b)(3).[3]

Before us, the McCoys concede that under the current version of the regulation their claimed minimum royalty deductions must be disallowed. They argue instead that the doctrine of legislative reenactment renders invalid the Treasury Department's 1977 amendment to § 1.612–3(b)(3) and that under the prior version of the regulation [4] their claimed deductions are legitimate. Specifically, they contend that § 1.612–3(b)(3) and its substantially similar predecessor, 26 C.F.R. § 39.23(m)–10 (1939), have received congressional approval by way of legislative reenactment of those

provisions of the Code that the regulations interpret.[5] Such congressional approval of these regulations, the McCoys argue, gives the regulations the force and effect of law, so that they may be amended only by act of Congress, and not by the Treasury Department.

## II.

Courts often rely on the proposition that congressional reenactment of statutory provisions underlying an administrative regulation gives the administrative interpretation the force and effect of law. *E.g., United States v. Board of Commissioners,* 435 U.S. 110, 134, 98 S.Ct. 965, 980, 55 L.Ed.2d 148 (1978); *United States v. Correll,* 389 U.S. 299, 305–06, 88 S.Ct. 445, 448–49, 19 L.Ed.2d 537 (1967); *Old Mission Portland Cement Co. v. Helvering,* 293 U.S. 289, 293–94, 55 S.Ct. 158, 160–61, 79 L.Ed. 367 (1934); *cf. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 382 n. 66, 102 S.Ct. 1825, 1841 n. 66, 72 L.Ed.2d 182 (1982). However, while the cases espousing this doctrine adhere to the axiom that regulations thus approved by

---

**3.** The regulation permits advance minimum royalties to be deducted in the year paid (as opposed to the year in which the minerals to which the royalties apply are sold or produced). The regulation defines a "minimum royalty" provision as one that "requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the absence of mineral production requiring payment of aggregate royalties in a greater amount." The district judge, citing Wing v. Commissioner, 81 T.C. 17, 40 (1983), ruled that the minimum royalties provided for in Midvale's subleases, which were to be paid in part by nonrecourse promissory notes "payable only from the proceeds of the mined coal, making the notes ... worthless if no coal is ever mined," did not qualify for special treatment under the regulation. *See also Maddrix v. Commissioner,* 780 F.2d 946, 950–51 (11 Cir.1986); *Ward v. Commissioner,* 784 F.2d 1424 (9 Cir.1986).

**4.** The original § 1.612–3(b)(3) in pertinent part provided:

(b) *Advanced royalties.*—If the owner of an operating interest in a mineral deposit or standing timber is required to pay royalties on a specified number of units of such mineral or timber annually whether or not extract-

ed or cut within the year, and may apply any amounts paid on account of units not extracted or cut within the year against the royalty on the mineral or timber thereafter extracted or cut, ...

(3) The payor, at his option, may treat the advanced royalties so paid or accrued in connection with mineral property as follows:

(i) As deductions from gross income for the year the advanced royalties are paid or accrued, or

(ii) As deductions from gross income for the year the mineral product, in respect of which the advanced royalties were paid, is sold.

**5.** The McCoys assert that congressional approval of the regulatory language on which they rely was effected by: the 1945 reenactment of section 23(m) of the 1939 Code (on which 26 C.F.R. § 39.23(m)–10 was based); the enactment of the 1954 Code replacing § 23(m) with sections 611 and 612 but effecting "no substantial change" in the treatment of advance minimum royalties; and numerous revisions of the Code, enacted after the promulgation of the original § 1.612–3(b)(3), that specifically addressed the treatment of mineral expenses but never suggested a congressional intention to reject or change the interpretation embodied in § 1.612–3(b)(3).

Congress may acquire the force of law, they do not stand for the corollary upon which the McCoys' case depends: that such a "reenacted" regulatory interpretation may be changed only by Congress.[6] In the cases cited by the McCoys, the Court invoked the legislative reenactment doctrine as a means of discerning congressional intent in order to determine how properly to interpret a statute. In none of these cases did the Court face the question whether an agency may, as the Treasury Department did here, prospectively[7] amend an established interpretation of a statute.

The Supreme Court posed, but declined to answer, this question in *Helvering v. R.J. Reynolds Tobacco Co.*, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536 (1939), where the Treasury Department sought to apply retroactively its amendments to a legislatively approved regulation. *Id.* at 116–17, 59 S.Ct. at 426–27. The Court soon addressed the issue in *Helvering v. Wilshire Oil Co.*, 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101 (1939), which involved prospective application of amended Treasury Regulations. The Court stated that the notion that an administrative interpretation of a statutory provision may be legislatively approved

through reenactment of that provision without material change "does not mean that a regulation interpreting a provision of one act becomes frozen into another act merely by reenactment of that provision, so that that administrative interpretation cannot be changed prospectively through exercise of appropriate rule-making powers." *Id.* at 100, 60 S.Ct. at 24. By its holding, the Court sought to avoid an "awkward situation" which, by preventing an administrative agency from amending its interpretation of a reenacted statute, would "drastically curtail the scope and materially impair the flexibility of administrative action" by permitting "[o]utstanding regulations which had survived one Act [to] be changed only after a preview by the Congress." *Id.* at 101, 60 S.Ct. at 24.

Later, in *Helvering v. Reynolds*, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438 (1941), the Court stated: "[The doctrine of legislative reenactment] is no more than an aid in statutory construction. While it is useful at times in resolving statutory ambiguities, it does not mean that the prior construction has become so imbedded in the law that only Congress can effect a change. It

---

**6.** It should be noted that in *Fondren v. Commissioner*, 324 U.S. 18, 29–30, 65 S.Ct. 499, 505, 89 L.Ed. 668 (1945), cited by the McCoys, the Court did state that if a regulation has been construed with substantial consistency, and the relevant statutory provision, with the meaning thus settled, has been reenacted by Congress, then this construction should be followed until Congress sees fit to change it. 324 U.S. at 29–30, 65 S.Ct. at 505. This statement is mere dictum, however, since *Fondren* did not involve an attempt by the Treasury Department to amend an established statutory interpretation and so did not present the same question as the case before us. When faced with the question whether the administrative agency charged with interpreting a statute may alter an established, congressionally approved statutory interpretation, the Supreme Court has upheld the agency's authority to amend its regulations prospectively. *See* discussion in text, *infra*.

*Ward v. Commissioner*, 784 F.2d 1424 (9 Cir. 1986) is another case cited by the McCoys that only appears to support the McCoys' proposed extension of the legislative reenactment doctrine. The *Ward* court stated in dictum that congressionally approved administrative interpretations "have the force of law and can only

be changed by Congress." *Id.* at 1430. The decision in *Ward*, however, turned on the fact that the taxpayer relied on two recent Revenue Rulings which were not administrative interpretations of long standing and had not been congressionally approved by subsequent reenactment of the pertinent provisions of the Code. These rulings thus failed at the threshold to qualify for special treatment under the legislative reenactment doctrine. Furthermore, the cases cited by the *Ward* court do not support the quoted proposition. *U.S. v. Correll*, 389 U.S. 299, 305–06, 88 S.Ct. 445, 449, 19 L.Ed.2d 537 (1967) does state that congressionally approved regulations have the force of law, but says nothing at all about exclusive congressional authority to amend such regulations. In *Helvering v. R.J. Reynolds Tobacco Co.*, 306 U.S. 110, 59 S.Ct. 423, 83 L.Ed. 536 (1939) the Court expressly left open the question whether such a regulation could be amended prospectively by the agency. *Id.* at 110, 59 S.Ct. at 423. As discussed in the text, *infra*, the Supreme Court later answered this question in the affirmative.

**7.** The revised regulation was promulgated in 1977; the Midvale subleases were executed in 1978.

gives way before changes in the prior rule or practice through exercise by the administrative agency of its continuing rulemaking power." *Id.* at 432, 61 S.Ct. at 973 (citations omitted); *see also Commissioner v. P.G. Lake, Inc.,* 356 U.S. 260, 265–66 n. 5, 78 S.Ct. 691, 694–95 n. 5, 2 L.Ed.2d 743 (1958) (prior administrative action always subject to change through exercise by administrative agency of its continuing rulemaking power) (dictum); *Dow Chemical Co. v. Kavanagh,* 139 F.2d 42, 44–45 (6 Cir.1943) (relying on *Wilshire Oil, supra,* and *Reynolds, supra,* court upholds prospective changes in legislatively reenacted Treasury Regulations); 2A Sutherland Statutory Construction § 49.09, at 400–01 (C. Sands 4th ed. 1984) ("The [legislative reenactment] doctrine has been limited to the extent that a later administrative interpretation can prospectively alter a former reenacted construction.").

To summarize, we view the doctrine of legislative reenactment, which gives the force and effect of law to administrative interpretations of statutory provisions that have been reenacted by Congress without substantial change, only as a tool for statutory interpretation. We do not view the doctrine as permitting such a congressionally approved interpretation to be amended only by act of Congress. Congressional reenactment of a statutory provision that is subject to a longstanding administrative interpretation of which Congress was aware at the time of reenactment may well create a presumption that Congress has accepted that interpretation as a permissible one; it does not preclude the administrative agency, in the exercise of its rulemaking authority, from later adopting some other reasonable and lawful interpretation of the statute. Thus, the 1977 amendment to § 1.612–3(b)(3) was in this respect a valid exercise of the Treasury Department's rulemaking authority. As conceded by the McCoys, this version of the regulation renders impermissible their claimed deductions for payment of advance minimum royalties. For this reason, we must affirm the district court's entry of summary judgment against the McCoys.

## III.

Given the McCoys' concession that the current version of § 1.612–3(b)(3) mandates disallowance of their claimed minimum royalty deductions, our decision that that regulation is valid disposes of this case. We need not discuss the question whether the claimed deductions would be permissible under the original version of Section 1.612–3(b)(3).

AFFIRMED.