# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 02-3093 & 02-3094

ALBERT J. HACKL, SR. and CHRISTINE M. HACKL,

*Petitioners-Appellants,*

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

Appeals from Decisions of the
United States Tax Court
Nos. 6921-00 and 6922-00

ARGUED JUNE 3, 2003—DECIDED JULY 11, 2003

Before FLAUM, *Chief Judge*, and BAUER and EVANS,
*Circuit Judges*.

EVANS, *Circuit Judge.* Most post-retirement hobbies
don't involve multi-million dollar companies or land re-
tirees in hot water with the IRS, but those are the cir-
cumstances in this case. Albert J. (A.J.) and Christine M.
Hackl began a tree-farming business after A.J.'s retire-
ment and gave shares in the company to family members.
The Hackls believed the transfers were excludable from
the gift tax, but the IRS thought otherwise. The Tax
Court agreed with the IRS, *Hackl v. Comm'r*, 118 T.C. 279
(2002), resulting in a gift tax deficiency of roughly $400,000
for the couple. The Hackls appeal.

Our story begins with A.J. Hackl's retirement and subsequent search for a hobby that would allow him to keep his hand in the business world, diversify his investments, and provide a long-term investment for his family. Tree-farming fit the bill and, in 1995, A.J. purchased two tree farms (worth around $4.5 million) and contributed them, as well as about $8 million in cash and securities, to Treeco, LLC, a limited liability company that he set up in Indiana (Treeco later changed names, but that doesn't matter for our purposes, so we'll refer to Treeco and its successors as simply Treeco).

A.J. and his wife, Christine, initially owned all of Treeco's stock (which included voting and nonvoting shares), with A.J. serving as the company's manager. Under Treeco's operating agreement, the manager served for life (or until resignation, removal, or incapacity), had the power to appoint a successor, and could also dissolve the company. In addition, the manager controlled any financial distributions, and members needed his approval to withdraw from the company or sell shares. If a member transferred his or her shares without consent, the transferee would receive the shares' economic rights but not any membership or voting rights. Voting members could run Treeco during any interim period between managers, approve any salaries or bonuses paid by the company, and remove a manager and elect a successor. With an 80-percent majority, voting members could amend the Articles of Organization and operating agreement and dissolve the company after A.J.'s tenure as manager. Both the voting and the nonvoting members had the right to access Treeco's books and records and to decide whether to continue Treeco following an event of dissolution (such as the death, resignation, removal, retirement, bankruptcy, or insanity of the manager). During A.J.'s watch, Treeco has operated at a loss and not made any distributions to its stockholders. While Treeco has yet to turn a profit,

A.J. was named "Tree Farmer of the Year" in Putnam County, Florida, in 1999.

Shortly after Treeco's creation, A.J. and Christine began annual transfers of Treeco voting and nonvoting shares to their children, their children's spouses, and a trust set up for the couple's grandchildren. After January 1998, 51 percent of the company's voting shares were in the hands of the couple's children and their spouses. The Hackls attempted to shield the transfers from taxation by treating them as excludable gifts on their gift tax returns. While the Internal Revenue Code imposes a tax on gifts, 26 U.S.C. § 2501(a), a donor does not pay the tax on the first $10,000 of gifts, "other than gifts of future interests in property," made to any person during the calendar year, 26 U.S.C. § 2503(b)(1). Unfortunately for the Hackls, the IRS thought that the transfers were future interests and ineligible for the gift tax exclusion. The Hackls took the dispute to the Tax Court which, as we said, sided with the IRS.

The Hackls contend that the Tax Court was in error. Although we owe no special deference to the Tax Court on a legal question, when we consider the application of the legal principle to the facts we will reject the Tax Court decision only if it is clearly erroneous. *See Seggerman Farms, Inc. v. Comm'r*, 308 F.3d 803, 805 (7th Cir. 2002) (quoting *Whittle v. Comm'r*, 994 F.2d 379, 381 (7th Cir. 1993)). Deficiencies determined by the Commissioner are presumed to be correct, and the taxpayers bear the burden of proving otherwise. *See Reynolds v. Comm'r*, 296 F.3d 607, 612 (7th Cir. 2002) (citing *Pittman v. Comm'r*, 100 F.3d 1308, 1313 (7th Cir. 1996)).

The crux of the Hackls' appeal is that the gift tax doesn't apply to a transfer if the donors give up all of their legal rights. In other words, the future interest exception to the gift tax exclusion only comes into play if

the donee has gotten something less than the full bundle of legal property rights. Because the Hackls gave up all of their property rights to the shares, they think that the shares were excludable gifts within the plain meaning of § 2503(b)(1). The government, on the other hand, interprets the gift tax exclusion more narrowly. It argues that any transfer without a substantial present economic benefit is a future interest and ineligible for the gift tax exclusion.

The Hackls' initial argument is that § 2503(b)(1) automatically allows the gift tax exclusion for their transfers. The Hackls argue that their position reflects the plain—and only—meaning of "future interest" as used in the statute, and that the Tax Court's reliance on materials outside the statute (such as the Treasury regulation definition of future interest and case law) was not only unnecessary, it was wrong. We disagree. Calling any tax law "plain" is a hard row to hoe, and a number of cases (including our decision in *Stinson Estate v. United States*, 214 F.3d 846 (7th Cir. 2000)) have looked beyond the language of § 2503(b)(1) for guidance. *See*, *e.g.*, *United States v. Pelzer*, 312 U.S. 399, 403-04 (1941), and *Comm'r v. Disston*, 325 U.S. 442, 446 (1945) (stating that regulatory definition of future interest has been approved repeatedly). The Hackls do not cite any cases that actually characterize § 2503(b)(1) as plain, and the term "future interest" is not defined in the statute itself. Furthermore, the fact that both the government and the Hackls have proposed different—yet reasonable—interpretations of the statute shows that it is ambiguous. Under these circumstances, it was appropriate for the Tax Court to look to the Treasury regulation and case law for guidance.

Hedging their bet, the Hackls say that the applicable Treasury regulation supports the conclusion that giving up all legal rights to a gift automatically makes it a present interest. The applicable Treasury regulation states

that a "future interest" is a legal term that applies to interests "which are limited to commence in use, possession, or enjoyment at some future date or time," Treas. Reg. § 25.2503-3. The regulation also provides that a present interest in property is "[a]n unrestricted right to the immediate use, possession, or enjoyment of property or the income from property (such as a life estate or term certain)." We don't think that this language automatically excludes all outright transfers from the gift tax. *See also Hamilton v. United States*, 553 F.2d 1216, 1218 (9th Cir. 1977).

We previously addressed the issue of future interests for purposes of the gift tax exclusion in *Stinson Estate*. In that case, forgiveness of a corporation's indebtedness was a future interest outside the gift tax exclusion because shareholders could not individually realize the gift without liquidating the corporation or declaring a dividend—events that could not occur upon the actions of any one individual under the corporation's bylaws. *See* 214 F.3d at 848. We said that the "sole statutory distinction between present and future interests lies in the question of whether there is postponement of enjoyment of specific rights, powers or privileges which would be forthwith existent if the interest were present." *Id.* at 848-49 (quoting *Howe v. United States*, 142 F.2d 310, 312 (7th Cir. 1944)). In other words, the phrase "present interest" connotes the right to substantial present economic benefit. *See Fondren v. Comm'r*, 324 U.S. 18, 20 (1945).

In this case, Treeco's operating agreement clearly foreclosed the donees' ability to realize any substantial present economic benefit. Although the voting shares that the Hackls gave away had the same legal rights as those that they retained, Treeco's restrictions on the transferability of the shares meant that they were essentially without immediate value to the donees. Granted, Treeco's operating agreement did address the possibility

that a shareholder might violate the agreement and sell his or her shares without the manager's approval. But, as the Tax Court found, the possibility that a shareholder might violate the operating agreement and sell his or her shares to a transferee who would then not have any membership or voting rights can hardly be called a substantial economic benefit. Thus, the Hackls' gifts—while outright—were not gifts of present interests.

The Hackls protest that Treeco is set up like any other limited liability corporation and that its restrictions on the alienability of its shares are common in closely held companies. While that may be true, the fact that other companies operate this way does not mean that shares in such companies should automatically be considered present interests for purposes of the gift tax exclusion. As we have previously said, Internal Revenue Code provisions dealing with exclusions are matters of legislative grace that must be narrowly construed. *See Stinson Estate*, 214 F.3d at 848. The onus is on the taxpayers to show that their transfers qualify for the gift tax exclusion, a burden the Hackls have not met.

The decision of the Tax Court is AFFIRMED.

A true Copy:

        Teste:


                                    _____
                                    *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*