T.C. Memo. 2010-2

UNITED STATES TAX COURT

WALTER M. PRICE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SANDRA K. PRICE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9611-06, 9642-06.    Filed January 4, 2010.

Trent D. Reinert and David S. Houghton, for petitioners.

Albert B. Kerkhove, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

THORNTON, Judge:  The issue for decision in these
consolidated cases is whether gifts that petitioners made of
limited partnership interests to their adult children during

2000, 2001, and 2002 qualify for annual exclusions as provided by section 2503(b).[1]

FINDINGS OF FACT

The parties have stipulated some facts, which we incorporate herein.  When they petitioned the Court, petitioners resided in Nebraska.  They have been married for many years and have three children, all of whom were of adult age at all times relevant to these cases.

## Formation of the Partnership

In 1958 Walter M. Price (Mr. Price) began his career in equipment finance and distribution at Caterpillar Tractor Co.  He later worked for a dealer in Omaha, Nebraska.  In 1976 he started his own company, Diesel Power Equipment Co. (DPEC), which eventually distributed and serviced about 40 lines of equipment and had about 90 employees.

Petitioners' children had no career interest in working for DPEC.  Consequently, when a group of long-term employees made an offer in the late 1990s, petitioners decided to sell the business as part of a careful financial plan which involved first placing the DPEC stock in a limited partnership.

On September 11, 1997, petitioners formed Price Investments Limited Partnership (the partnership) as a limited partnership

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

under Nebraska law.  When the partnership was formed, Price Management Corp., a Nebraska corporation, was its 1-percent general partner; the Walter M. Price Revocable Trust and the Sandra K. Price Revocable Trust were each 49.5-percent limited partners.  Mr. Price was president of Price Management Corp., and Mr. and Ms. Price, through revocable trusts, held the shares in Price Management Corp.

When the partnership was formed, its assets consisted of the DPEC stock and three parcels of commercial real estate leased under long-term leases to DPEC and another equipment company.  On January 5, 1998, the partnership sold the DPEC stock and invested the sale proceeds in marketable securities.

Gifts and Distributions to Petitioners' Children

During 1997 through 2002 each petitioner gave each of their three adult children interests in the partnership as shown below.[2]

_____

[2]The parties have stipulated that during each of the years 1998 through 2002, each petitioner made separate and equal gifts to each child.  The parties have also stipulated that during 1997 "petitioners" transferred a 17-percent partnership interest to each child, without specifying the manner in which they made the gifts.  Because all the limited partnership interests were initially held equally by petitioners' respective revocable trusts, and because all these limited partnership interests were transferred to petitioners' children by 2002, it would appear that petitioners' gifts in 1997 necessarily came equally from petitioners' respective revocable trusts.  Although it makes no difference to our analysis, for ease of presentation we have assumed that petitioners made their 1997 gifts, like all the other gifts, separately and equally.  The record does not reveal, for any year, the exact manner in which petitioners effected gifts to their children of the limited partnership interests held
(continued...)

| Year | Partnership Gift Interests Transferred by Each Petitioner to Each Child | Total Partnership Gift Interests Each Year | Children's Cumulative Interests |
|------|------|------|------|
| 1997 | 8.5% | 51% | 51% |
| 1998 | 1 | 6 | 57 |
| 1999 | 0.5 | 3 | 60 |
| 2000 | 0.5 | 3 | 63 |
| 2001 | 0.85 | 5.1 | 68.1 |
| 2002 | 5.15 | 30.9 | 99 |

On Forms 1065, U.S. Return of Partnership Income, for taxable years 1997 through 2002, the partnership reported income from rental activities and losses, gains, and other income from investment activities.  Each year except 1997 and 2001 the partnership made cash distributions in equal amounts to each child, as shown in the table below.

| Year | Total Partnership Distributions to Children |
|------|------|
| 1997 | -- |
| 1998 | $7,212 |
| 1999 | 343,800 |
| 2000 | 100,500 |
| 2001 | -- |
| 2002 | 76,824 |

Provisions of the Limited Partnership Agreement

The limited partnership agreement (the partnership agreement) states that the partnership's primary purpose is to achieve a reasonable rate of return on a long-term basis with

---

[2](...continued)
originally by the revocable trusts.

respect to its investments.[3]  The partnership agreement generally prevents any partner from withdrawing capital contributions.  The partnership agreement also restricts transfer and assignment of partnership interests as follows:

>   11.1  Prohibition Against Transfer.  Except as hereinafter set forth, no partner shall sell, assign, transfer, encumber or otherwise dispose of any interest in the partnership without the written consent of all partners; provided, however, a limited partner may sell or otherwise transfer his or her partnership interest to a general or limited partner, or to a trust held for the benefit of a general or limited partner.  * * *

>   11.2  Assignment.  Any assignment made to anyone, not already a partner, shall be effective only to give the assignee the right to receive the share of profits to which his assignor would otherwise be entitled, shall not relieve the assignor from liability under any agreement to make additional contributions to capital, shall not relieve the assignor from liability under the provisions of the partnership agreement, and shall not give the assignee the right to become a substituted limited partner. * * * The partnership shall continue with the same basis and capital amount for the assignee as was attributable to the former owner who assigned the limited partnership interest. * * *

---

[3]The partnership agreement provides:

>   2.1  Purposes.  The partnership shall invest in, acquire, own, sell, encumber, operate, dispose of, and deal in and with investment grade real and personal property.  The partners intend to reinvest income, gain and profits from the partnership's investments to their mutual advantage, as the general partner may determine, subject to the provisions hereof, and hereby declare that annual or periodic distributions to the partners are secondary to the partnership's primary purpose of achieving a reasonable, compounded rate of return, on a long-term basis, with respect to its investments.

The partnership agreement further provides that in the event of any voluntary or involuntary assignment of a partnership interest, "the partnership and each of the remaining partners shall have the option to purchase the partnership interest for its fair market value" from the assignee. The partnership agreement provides detailed rules for exercising the purchase option and for determining the fair market value of the partnership interest.[4] The partnership agreement provides generally that the partnership will terminate after 25 years but may be dissolved sooner if there is written consent or affirmative vote "by at least two-thirds (2/3) in interest of the partners."

Pursuant to the partnership agreement, partnership profits are shared by the partners according to their proportional partnership interests. Partnership profits are to be distributed to the partners "in the discretion of the general partner except as otherwise directed by a majority in interest of all of the partners, both general and limited." The partnership agreement states that neither the partnership nor the general partner has

---

[4]The partnership agreement provides that for this purpose fair market value is to be determined on the basis of a majority of three appraisers, one selected by the partner exercising the option, one selected by the assignee of the partnership interest, and the third selected by the other two appraisers. The partnership agreement requires that any purchase option be exercised within 180 days of any involuntary transfer but provides no deadline for exercising a purchase option with respect to a voluntary transfer.

"any obligation" to distribute profits to enable the partners to pay taxes on the partnership's profits.

The partnership agreement provides that it is to be governed, construed, and interpreted according to the law of the State of Nebraska. The partnership agreement is binding upon "all the parties hereto, their heirs, successors, assigns, and legal representatives forever."

Petitioners' Gift Tax Reporting and Respondent's Determinations

On their separate Forms 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 2000, 2001, and 2002 each petitioner identically reported gifts, annual exclusions, and taxable gifts as follows:

| Year | Reported Value of Each Gift | Reported Total Gifts | Total Annual Exclusions | Reported Taxable Gifts |
|------|------|------|------|------|
| 2000 | $14,905 | $44,715 | $30,000 | $14,715 |
| 2001 | 20,770 | 62,310 | 30,000 | 32,310 |
| 2002 | 118,405 | 355,215 | 33,000 | 322,315 |

For each year petitioners reported zero gift tax due after applying unified credits.

Petitioners attached to their gift tax returns valuation reports supporting the reported gift values. Each valuation report indicates substantial discounts for lack of control and lack of marketability of the transferred partnership interests, stating: "Unless a partner owns or controls two-thirds of the

partnership interests, his/her investment is illiquid until at least the scheduled termination date."

Respondent issued each petitioner a notice of gift value determination for 2000 and separate notices of deficiency for 2001 and 2002. Each of these notices disallowed annual gift tax exclusions for each transferred partnership interest for each year on the ground that the gifts were of future interests in property. Respondent determined that petitioners had these gift tax deficiencies for 2001 and 2002:

| Year | Petitioner | Deficiency |
|------|------------|------------|
| 2001 | Walter M. Price | $21,763 |
| 2002 | Walter M. Price | 14,741 |
| 2001 | Sandra K. Price | 20,480 |
| 2002 | Sandra K. Price | 14,602 |

OPINION

The parties disagree as to whether petitioners' gifts of partnership interests to their children are properly characterized as present interests so as to qualify for annual gift tax exclusions under section 2503(b). Petitioners bear the burden of proving that their gifts qualify for annual exclusions.[5] See Rule 142(a); Hackl v. Commissioner, 118 T.C. 279, 294 (2002), affd. 335 F.3d 664 (7th Cir. 2003); see also Stinson Estate v. United States, 214 F.3d 846, 848 (7th Cir. 2000).

---

[5]Petitioners do not claim and have not established that the conditions of sec. 7491(a) have been met to shift the burden of proof to respondent with regard to any factual issue.

A.  Legal Framework

Section 2501 generally imposes a tax on the transfer of property by gift.  Section 2503(b) provides an inflation-adjusted annual exclusion of $10,000 per donee.[6]  The annual exclusion applies to "other than gifts of future interests in property".  Sec. 2503(b)(1).

The statute does not define the term "future interests".  The regulations provide:

> "Future interest" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession, or enjoyment at some future date or time.  The term has no reference to such contractual rights as exist in a bond, note (though bearing no interest until maturity), or in a policy of life insurance, the obligations of which are to be discharged by payments in the future.  But a future interest or interests in such contractual obligations may be created by the limitations contained in a trust or other instrument of transfer used in effecting a gift.
>
> * * * An unrestricted right to the immediate use, possession, or enjoyment of property or the income from property (such as a life estate or term certain) is a present interest in property. * * * [Sec. 25.2503-3(a) and (b), Gift Tax Regs.]

An example in the regulations provides that where a trustee is authorized in his discretion to withhold payments of income for addition to trust corpus, the beneficiary's right to receive the

---

[6]For 2002, the first year for which there was an inflation adjustment, the exclusion amount was $11,000.  Rev. Proc. 2001-59, sec. 3.19, 2001-2 C.B. 623, 627.

income payments is not a present interest and no exclusion is
allowed with respect to the transfer in trust.  Sec. 25.2503-
3(c), Example (1), Gift Tax Regs.  Caselaw is to similar effect.
See, e.g., French v. Commissioner, 138 F.2d 254 (8th Cir. 1943).

   The Supreme Court has stated:

   it is not enough to bring the exclusion into force that
   the donee has vested rights.  In addition he must have
   the right presently to use, possess or enjoy the
   property.  These terms are not words of art, like "fee"
   in the law of seizin * * * but connote the right to
   substantial present economic benefit.  The question is
   of time, not when title vests, but when enjoyment
   begins.  Whatever puts the barrier of a substantial
   period between the will of the beneficiary or donee now
   to enjoy what has been given him and that enjoyment
   makes the gift one of a future interest within the
   meaning of the regulation.  [Fondren v. Commissioner,
   324 U.S. 18, 20-21 (1945).]

   In Hackl v. Commissioner, supra, this Court held that gifts
of units in a limited liability company (LLC) were gifts of a
future interest that did not qualify for the annual exclusion.
The Court rejected the taxpayers' argument that a gift that takes
the form of an outright transfer of an equity interest in a
business or property is necessarily a gift of a present interest.
Id. at 292.  The Court held that to establish entitlement to an
annual exclusion under section 2503(b), a taxpayer must--

   establish that the transfer in dispute conferred on the
   donee an unrestricted and noncontingent right to the
   immediate use, possession, or enjoyment (1) of property
   or (2) of income from property, both of which
   alternatives in turn demand that such immediate use,
   possession, or enjoyment be of a nature that
   substantial economic benefit is derived therefrom.
   * * * [Id. at 293.]

B.    The Parties' Contentions

Petitioners contend that their gifts of the partnership interests are properly characterized as gifts of present interests because the donees can freely transfer the interests to one another or to the general partner, Price Management Corp. Petitioners also contend that each donee has immediate rights to partnership income and may freely assign income rights to third persons.  They suggest that Hackl v. Commissioner, supra, was decided incorrectly and contend that it is, in any event, distinguishable from the instant cases.

Relying on Hackl, respondent contends that the transferred partnership interests represent future interests because the partnership agreement effectively bars transfers to third parties and does not require income distributions to the limited partners.[7]

C.    Analysis

We decline petitioners' invitation to reconsider our holding in Hackl.  Furthermore, we disagree that Hackl is distinguishable from the instant cases in ways that are helpful to petitioners. As explained below, applying the methodology set forth in Hackl, we conclude that petitioners have failed to show that their gifts of interests in the partnership conferred upon the donees the

---

[7]Respondent stipulates that the fair market values of the gifts were correctly reported on petitioners' gift tax returns.

immediate use, possession, or enjoyment of either (1) the transferred property or (2) the income therefrom.

1.  Application to the Transferred Property

We agree with petitioners that the partnership agreement must be examined to determine whether the donees obtained the immediate use, possession, or enjoyment of the transferred partnership interests.  We disagree, however, that the partnership agreement permits the donees presently to access any substantial economic benefit from the transferred property.

It is undisputed that under the partnership agreement the donees have no unilateral right to withdraw their capital accounts.  Furthermore, section 11.1 of the partnership agreement expressly prohibits partners from selling, assigning, or transferring their partnership interests to third parties or from otherwise encumbering or disposing of their partnership interests without the written consent of all partners.  As stated with respect to analogous circumstances in Hackl v. Commissioner, 118 T.C. at 297, transfers subject to the contingency of approval (by the LLC manager in Hackl and by all partners in the instant cases) "cannot support a present interest characterization, and the possibility of making sales in violation thereof, to a transferee who would then have no right to become a member or to participate in the business, can hardly be seen as a sufficient source of substantial economic benefit."

Moreover, because of the operation of section 11.2 of the partnership agreement, it appears that the donees are not even properly characterized as limited partners in the partnership. Section 11.2 of the partnership agreement provides: "Any assignment made to anyone, <u>not already a partner</u>, shall be effective only to give the assignee the right to receive the share of profits to which his assignor would otherwise be entitled * * * and <u>shall not give the assignee the right to become a substituted limited partner</u>." (Emphasis added.)[8] It must be remembered that when the partnership was created, petitioners' children were not partners--the only partners were the 1-percent general partner, Price Management Corp., and two 49.5-percent limited partners, the Walter M. Price Revocable Trust and the Sandra K. Price Revocable Trust. The record does not reveal exactly how petitioners effected assignments of limited partnership interests from these trusts to their children. But however it was done, because the children were not already partners, pursuant to section 11.2 they did not become substituted limited partners; rather, the gifts were effective only to give each child a share of the profits to which the

---

[8]Petitioners contend that section 11.2 of the partnership agreement permits the donees to sell their shares of partnership profits to any third party without approval of the other partners or the partnership. We disagree. This provision merely describes the effect of assignments and does not supersede the immediately preceding section 11.1 of the partnership agreement restricting a limited partner's ability to sell or assign his or her partnership interest.

revocable trusts otherwise would have been entitled. Consequently, the donees lack the ability "presently to access any substantial economic or financial benefit that might be represented by the ownership units." Hackl v. Commissioner, supra at 296.

But even if it were to be assumed, contrary to the foregoing analysis, that the donees did somehow become substituted limited partners, it would not affect our conclusion that contingencies stand between the donees and their receipt of economic value for the transferred partnership interests so as to negate finding that the donees have the immediate use, possession, or enjoyment of the transferred property. Pursuant to section 11.1 of the partnership agreement, unless all partners consented the donees could transfer their partnership interests only to another partner or to a partner's trust. In addition, any such purchase would be subject to the option-to-purchase provisions of section 11.4 of the partnership agreement, which gives the partnership itself or any of the other partners a right to purchase the property according to a complicated valuation process but without providing any time limit for exercising the purchase option with respect to a voluntary transfer.

Petitioners suggest that if one donee purchased the partnership interest of another donee, the purchaser would gain an "unrestricted and noncontingent right to the immediate use,

possession or enjoyment of the partnership interest", for instance, by being able unilaterally to cause the partnership's liquidation.[9] As just discussed, we do not believe that the donees were substituted limited partners in the partnership. Consequently, we do not believe that the donees possessed anything more than income rights to transfer to each other or anyone else. More fundamentally, we reject any suggestion that a present interest in a donee is properly founded on additional rights that the donee or some other donee might later acquire.

Petitioners allude to the possibility of the donees' selling their partnership interests to the general partner. It must be remembered, however, that the general partner is owned by petitioners and that its president is Mr. Price, who engineered the gifts of partnership interests to his children in the first instance. If the possibility of a donor's agreeing to buy back a gift sufficed to establish a present interest in the donee, little would remain of the present interest requirement and its statutory purpose would be subverted if not entirely defeated. Cf. <u>Chanin v. United States</u>, 183 Ct. Cl. 840, 850, 393 F.2d 972,

---

[9]The premise seems incorrect. Section 10.3.1 of the partnership agreement permits the partnership to be dissolved with the consent of "at least two-thirds (2/3) in interest of the partners." The greatest partnership interest held by any partner (though not until 2002) was a 33-percent interest. A donee who purchased another donee's 33-percent interest would have only a 66-percent interest, which would be insufficient to unilaterally effect a dissolution under section 10.3.1, which requires consent by "at least two-thirds (2/3) in interest of the partners."

977 (1968) (rejecting the proposition that an annual exclusion should be allowed "in every case in which the donee received a future interest in property, which was marketable, thus doing violence to the well recognized statutory purpose").

Petitioners contend that the donees enjoyed a present interest in the transferred property because they were able to use the Schedules K-1, Partner's Share of Income, Credits, Deductions, Etc., that the partnership issued to them each year as evidence of their own personal assets, thereby enhancing their "financial borrowing ability."  Apart from Mr. Price's vague and uncorroborated testimony, there is no evidence to support this contention.  In any event, whatever benefit the donees might be thought to enjoy in this regard is at best highly contingent and speculative and does not, we believe, constitute a source of substantial economic benefit, particularly in the light of the restrictions on alienation (including on the ability of a partner to "encumber" a partnership interest) contained in the partnership agreement.  Cf. Stinson Estate v. United States, 214 F.3d at 848 (holding that a gift of forgiveness of corporate indebtedness was a future interest notwithstanding that the individual donees saw an increase in their stock value due to a balance sheet improvement of the debtor family-owned corporation).

2.  <u>Application to Income From the Transferred Property</u>

In order to show that the gifts of the partnership interests afforded the donees the right to immediately use, possess, or enjoy the income therefrom, petitioners must show that:  (1) The partnership would generate income at or near the time of the gifts; (2) some portion of that income would flow steadily to the donees; and (3) the portion of income flowing to the donees can be readily ascertained.  See <u>Hackl v. Commissioner</u>, 118 T.C. at 298.

Because the partnership owned real properties generating rents under long-term leases, we believe that the partnership could be expected to generate income at or near the time of the gifts.  The record fails to establish, however, that any ascertainable portion of the income would flow steadily to the donees.  To the contrary, the record shows that the partnership's income did <u>not</u> flow steadily to the donees--there were no distributions in 1997 or 2001.

Pursuant to the partnership agreement, profits of the partnership were distributed at the discretion of the general partner, except when otherwise directed by a majority in interest of all the partners, both limited and general.  Furthermore, the partnership agreement stated that "annual or periodic distributions to the partners are secondary to the partnership's

primary purpose of achieving a reasonable, compounded rate of return, on a long-term basis, with respect to its investments."

Petitioners allege that the partnership is expected to make distributions to cover the donees' income tax liabilities arising from the partnership's activities. Section 7.3 of the partnership agreement, however, clearly makes such distributions discretionary: "Neither the partnership nor the general partner shall have any obligation to distribute profits to enable the partners to pay taxes on the partnership's profits." Because the timing and amount of any distributions are matters of pure speculation, the donees acquired no present right to use, possess, or enjoy the income from the partnership interests.

Without citation of legal authority, petitioners contend that the general partner has a "strict fiduciary duty" to make income distributions to the donees. We are not persuaded that such a fiduciary duty, if it exists, establishes a present interest in a transferred limited partnership interest where the limited partner lacks withdrawal rights.[10] Moreover, because (as

---

[10]As has been observed elsewhere:

In many respects a limited partner who has no withdrawal rights is much like a beneficiary of a discretionary trust whose only rights with respect to the trust consist of the right to trust distributions which may be withheld at the discretion of the trustee. Regardless of the general partner's fiduciary duties, there is no certainty that the limited partner will receive current distributions from the partnership. * * * [Kalinka, "Should the Gift of a Limited Partnership

(continued...)

previously discussed) the donees are not substituted limited partners, there is significant question as to whether under Nebraska law the general partner owes them any duty other than loyalty and due care.[11]  Cf. <u>Kellis v. Ring</u>, 155 Cal. Rptr. 297 (Ct. App. 1979) (holding that under California law the assignee of a limited partner's partnership interest could not bring suit against the general partner for alleged breaches of fiduciary duty).

In sum, petitioners have failed to show that the gifts of partnership interests conferred on the donees an unrestricted and noncontingent right to immediately use, possess, or enjoy either the property itself or income from the property.  We therefore hold that petitioners are not entitled to exclusions under section 2503(b) for their gifts of partnership interests.

---

[10](...continued)
Interest Constitute a Future Interest?", Taxes, Apr. 1998, at 12, 18.]

[11]Pursuant to the Nebraska Uniform Limited Partnership Act, an assignee of a limited partnership interest may become a limited partner if and to the extent that the partnership agreement so provides and all other partners consent.  Neb. Rev. Stat. Ann. sec. 67-274(a) (1981).  As previously discussed, it appears that the donees did not become substituted limited partners in the partnership.  With respect to persons who are not partners of a limited partnership, the general partner has the liabilities of a partner in a partnership without limited partners.  Neb. Rev. Stat. Ann. sec. 67-256 (1981).  Under Nebraska law, the only fiduciary duty such a partner owes to other partners is the duty of loyalty and due care.  Neb. Rev. Stat. Ann. sec. 67-424(1), (2), and (3) (1997).

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.