T.C. Memo. 2012-157

UNITED STATES TAX COURT

ESTATE OF GEORGE H. WIMMER, DECEASED, GEORGE W. WIMMER,
PERSONAL REPRESENTATIVE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26540-07.            Filed June 4, 2012.

<u>Wallace Becker</u> and <u>William J. Lindsay, Jr.</u>, for petitioner.

<u>J. Anthony Hoefer</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  Respondent determined a Federal estate tax deficiency of

$263,711 with respect to the Estate of George H. Wimmer (estate).  After

concessions by the parties, the issue for decision is whether gifts of limited

partnership interests made in 1996, 1997, 1998, 1999, and 2000 qualify for the

Federal gift tax annual exclusion under section 2503(b).[1]  The Court holds that

they do.

## Background

The parties submitted this case fully stipulated pursuant to Rule 122.  The

stipulation of facts and attached exhibits are incorporated herein by this reference.

George H. Wimmer (decedent) resided in Nebraska when he died on March 29,

2004.  George W. Wimmer, decedent's son and the personal representative of the

estate, resided in Nebraska when the petition was filed on behalf of the estate.

In 1996 and 1997 decedent and his wife, Ilse Wimmer (together, the

Wimmers), each as trustee of the George H. Wimmer Trust and the Ilse Wimmer

Trust, respectively, formed the George H. Wimmer Family Partnership, L.P.

(partnership), as a limited partnership under California law.  The George H.

Wimmer Family Partnership, L.P. Limited Partnership Agreement (partnership

agreement) was executed on June 27, 1996.[2]  The Wimmers, as trustees of their

respective trusts, were the initial general partners and limited partners.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the date of decedent's death; all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The certificate of limited partnership, however, was not filed with the California secretary of state until March 10, 1997.

The partnership agreement generally restricts transfer of partnership interests and limits the instances in which a transferee may become a substitute limited partner. The transfer of limited partnership interests requires, among other things, the prior written consent of the general partners and 70% in interest of the limited partners. Upon satisfaction of the transfer requirements, the transferee will not become a substitute limited partner unless the transferring limited partner has given the transferee that right and the transferee: (1) accepts and assumes all terms and provisions of the partnership agreement; (2) provides, in the case of an assignee who is a trustee, a complete copy of the applicable trust instrument authorizing the trustee to act as partner in a partnership; (3) executes such other documents as the general partners may reasonably require; and (4) is accepted as a substitute limited partner by unanimous written consent of the general partners and the limited partners.

Notwithstanding the transfer restrictions and limitations on partnership admission, the partnership agreement creates an exception for transfers to related parties. The partnership agreement allows the transfer of a partnership interest by gift or as a result of a partner's death without the prior written consent of the general partners if the transfer is to or for the benefit of an incumbent partner or any related party. Moreover, the partnership agreement allows a transferee of a

partnership interest to be admitted to the partnership without the prior written consent of the general partners if the transferee is an existing partner or a related party. A "related party" means a partner's "descendants and ancestors, or an estate or trust the sole beneficiaries of which are one or more descendants or ancestors of a Partner, a QTIP trust under Code § 2056(b)(7) or similar irrevocable trust for a Partner's spouse, provided that the remainder beneficiaries of the trust consist exclusively of the Partner's descendants or ancestors."

In November 1997 the partnership was reorganized under Georgia law as George H. Wimmer Partnership, L.P. On November 20, 1997, the partnership agreement was restated in its entirety to substitute Georgia statutory provisions for California provisions and to effect other nonsubstantive amendments. The restated partnership agreement retained the partnership restrictions on transfers of partnership interests and the admission of transferees as limited partners. However, the restated partnership agreement also preserved the exception from such restrictions for transfers to related parties.

Pursuant to the transfer provisions discussed above, gifts of limited partnership interests were made to related parties on November 23, 1996, January 9, 1997, November 21, 1997, March 13, 1998, January 15, 1999, and January 7, 2000. The related parties were listed as limited partners in exhibit A of the

partnership agreement as follows: (1) George W. Wimmer, (2) William M. Wimmer, decedent's son, (3) the three adult children of Ilse Wimmer's deceased sister, and (4) National Bank of Commerce Trust and Savings Association, as trustee for the beneficiaries of the George H. and Ilse Wimmer Grandchildren Trust dated October 31, 1996 (Grandchildren Trust).[3] The parties stipulated that if the gifts qualify for the annual exclusion, the taxable amounts of the gifts are $1,402, $0, $8,455, $53,376, and $0, respectively.

The partnership's primary purpose was to invest in property, including stock, bonds, notes, securities, and other personal property and real estate, on a profitable basis, and to share profits, losses, benefits and risks with the partners. The partners intended the partnership to: increase family wealth, control the division of family assets, restrict nonfamily rights to acquire such family assets and, by using the annual gift tax exclusion, transfer property to younger generations without fractionalizing family assets.

---

[3]The beneficiaries of the Grandchildren Trust are the Wimmers' three minor grandsons and the three minor grandchildren of Ilse Wimmer's deceased sister. The Grandchildren Trust grants the beneficiaries the right to withdraw a specified amount of trust principal each year. The parties stipulated that the withdrawal right meets the test prescribed in Crummey v. Commissioner, 397 F.2d 82 (9th Cir. 1968), aff'g T.C. Memo. 1966-144, and therefore qualifies as a present interest if the Court finds that these limited partnership interests qualify as present interests.

Pursuant to the partnership agreement partnership profits are allocated to the partners according to their proportional partnership interests. All distributions of net cash flow[4] are also shared among the partners in proportion to their partnership interests. Distributions must be made in cash pro rata. The partnership agreement, as amended, provides that the primary source for distributions is distributable cash derived from partnership income.

When the partnership was formed, its assets consisted of publicly traded and dividend-paying stock.[5] No additional funding of the partnership occurred, and the partnership has never held any assets other than the publicly traded stock and dividends received therefrom.

In December 1996 the partnership received dividends from the stock and continued to receive dividends quarterly. The partnership made distributions to the limited partners in 1996, 1997, and 1998 for payment of Federal income tax. Beginning in February 1999 the partnership continuously distributed all dividends,

---

[4]The partnership determines its net cash flow annually. The net cash flow includes cash on hand after payment of then-due partnership debts, prepayment of partnership debts, and reserves held for reasonably necessary expenses and future investment.

[5]In September 1996 the Wimmers contributed First Commerce Bancshares class A and class B stock. Wells Fargo Bank acquired First Commerce in June 2000, and as part of the acquisition, First Commerce stock was exchanged for Wells Fargo stock.

net of partnership expenses, to the partners. Dividends were distributed when received and in proportion to partnership interests. In addition to dividend distributions, limited partners had access to capital account withdrawals and used such withdrawals for, among other things, paying down their residential mortgages.

## Discussion

The parties disagree as to whether the gifts of limited partnership interests are present interests and thereby qualify for the annual gift tax exclusion under section 2503(b). The estate bears the burden of proving that the gifts qualify for the annual exclusion. See Rule 142(a); Hackl v. Commissioner, 118 T.C. 279, 289 (2002), aff'd, 335 F.3d 664 (7th Cir. 2003). The parties stipulated the values of the gifts and the extent to which the annual gift tax exclusion, if available, applies.[6]

Section 2001(a) imposes a tax on the transfer of a decedent's taxable estate. The tax equals the excess of the tentative tax on the sum of a decedent's taxable estate and adjusted taxable gifts, over the amount of tax which would have been

---

[6]The parties stipulated that if the gifts of limited partnership interests do not qualify for the annual gift tax exclusion, the full values of the gifts--which the parties also stipulated--would be included in decedent's adjusted taxable gifts. If, however, the gifts qualify for the annual exclusion, only $1,402, $0, $8,455, $53,376, and $0, respectively, would be included.

payable with respect to gifts made by the decedent after 1976. Sec. 2001(b).

Adjusted taxable gifts include the total amount of taxable gifts (within the

meaning of section 2503) made by the decedent after 1976, other than gifts which

are includible in the gross estate of the decedent. Id.

Section 2503(a) defines "taxable gifts" as the total amount of gifts made

during the calendar year, less certain statutory deductions. Section 2503(b)

provides an inflation-adjusted annual exclusion of $10,000 per donee for gifts

"other than gifts of future interests in property", that is, for present interest gifts.[7]

The term "future interest" includes "reversions, remainders, and other

interests or estates, whether vested or contingent, and whether or not supported by

a particular interest or estate, which are limited to commence in use, possession, or

enjoyment at some future date or time." Sec. 25.2503-3(a), Gift Tax Regs. A

present interest, however, is "An unrestricted right to immediate use, possession,

or enjoyment of property or the income from property". Sec. 25.2503-3(b), Gift

Tax Regs. The terms "use, possess or enjoy" connote the right to substantial

present economic benefit, that is, meaningful economic, as opposed to paper,

---

[7]The annual exclusion amount is subject to a cost-of-living adjustment. See sec. 2503(b)(2); Rev. Proc. 2001-59, sec. 3.19, 2001-2 C.B. 623, 627. Because decedent transferred the limited partnership interests before 2002, when the adjustment increased the limit to $11,000, the annual exclusion amount is $10,000 per donee for the gifts at issue here.

rights. Hackl v. Commissioner, 118 T.C. at 291 (discussing Fondren v. Commissioner, 324 U.S. 18, 20-21 (1945)). Therefore, to qualify as a present interest, a gift must confer on the donee a substantial present economic benefit by reason of use, possession, or enjoyment (1) of property or (2) of income from the property. Id. at 293.

Here the property with which the Court is concerned is an ownership interest in an entity, i.e., the limited partnership interests. A gift in the form of an outright transfer of an equity interest in a business or property, such as limited partnership interests, is not necessarily a present interest gift. See id. at 292; see also Price v. Commissioner, T.C. Memo. 2010-2. Rather, the Court must probe, among other things, "whether the donees in fact received rights differing in any meaningful way from those that would have flowed from a traditional trust arrangement." Hackl v. Commissioner, 118 T.C. at 292.[8]

When determining whether a gift is of a present interest, the Court examines all facts and circumstances as they existed on the date of the gift. See, e.g., Fondren v. Commissioner, 324 U.S. at 21-22. Thus, on each date of gift, the estate

---

[8]One such distinction is that the trust, and not the trust beneficiary, incurs Federal income tax liability on trust income, see sec. 1(e), whereas the recipient of a limited partnership interest gift is liable for the Federal income tax on his share of partnership income, even if no portion of his share is actually distributed to him, see secs. 702(c), 704(e)(2); sec. 1.702-1(a), Income Tax Regs.

must show from all the facts and circumstances that, in receiving the limited partnership interests, the donees thereby obtained use, possession, or enjoyment (1) of the limited partnership interests or (2) of income from those interests within the meaning of section 2503(b).

With respect to the limited partnership interests themselves, the primary source of the donees' rights and restrictions to the use, possession, or enjoyment of the property is the partnership agreement. The donees' rights, however, are limited. For example, although limited partners may transfer their partnership interests to other partners and related parties, as described above, all other transfers are restricted unless certain requirements are met. Therefore, the donees did not receive unrestricted and noncontingent rights to immediate use, possession, or enjoyment of the limited partnership interests themselves, and, instead, the Court will consider whether the donees received such rights in the income.

For the Court to ascertain whether rights to income satisfy the criteria for a present interest under section 2503(b), the estate must prove, on the basis of the surrounding circumstances, that: (1) the partnership would generate income, (2) some portion of that income would flow steadily to the donees, and (3) that portion of income could be readily ascertained. See Calder v. Commissioner, 85

T.C. 713, 727-728 (1985); see also  Hackl v. Commissioner, 118 T.C. at 298;

Price v. Commissioner, T.C. Memo. 2010-2.  In September 1996 before the

partnership made gifts of limited partnership interests, the partnership held publicly

traded and dividend-paying stock.  The partnership received its first quarterly

dividend in December 1996 and continued to receive dividends for each quarter

thereafter.  The partnership made gifts of limited partnership interests on November

23, 1996, January 9, 1997, November 21, 1997, March 13, 1998, January 15, 1999,

and January 7, 2000.  Therefore, with respect to the first prong, the estate has

proven that on each date the partnership made a gift of a limited partnership interest

the partnership expected to generate income.

With respect to the second prong, the fiduciary relationship between the

general partners and the trustee of the Grandchildren Trust shows that on the date

of each gift some portion of partnership income was expected to flow steadily to

the limited partners.  Both the partnership agreement and applicable State law

impose fiduciary obligations on the general partners.  In describing the general

partners' powers, the partnership agreement, as initially written and as restated,

provided that the general partners "possess full and exclusive power to manage,

control, administer and operate Partnership business and affairs * * * subject, in

all events, to fiduciary duties to Limited Partners and the continuing duty to

advance the Partnership's purposes and best interests".  Under California law,

partners have fiduciary duties toward each other and because of such duties may not

take advantage of, or otherwise put adverse pressure on, other partners when

conducting partnership business.  See, e.g., Leff v. Gunter, 658 P.2d 740, 744 (Cal.

1983); BT-I v. Equitable Life Assurance Soc'y, 89 Cal. Rptr. 2d 811, 815-816 (Ct.

App. 1999) (citing Cal. Corp. Code sec. 15643 (West 1991) (repealed 2006)).  In

Georgia, general partners owe fiduciary duties to limited partners, including the duty

to act in the utmost good faith and with the finest loyalty, which the limited partners

are entitled to enforce.  See, e.g., Hendry v. Wells, 650 S.E.2d 338, 346 & n.9 (Ga.

Ct. App. 2007).

According to the Grandchildren Trust documents, the trust's only asset was

a limited partnership interest, which, given the transfer restrictions described

above, could not be liquidated or otherwise exchanged for cash.  Notably, the

partnership's sole asset was dividend-paying stock.[9]  As a limited partner, and on

---

[9]The partnership's only business was investing in marketable securities, i.e., the dividend-paying stock.  This investment, when combined with partnership purposes to increase partners' net worth and transfer wealth using the annual gift tax exclusion, suggests that the partnership was created with the intent to make periodic distributions to the limited partners.  Indeed, the limited partners not only received annual distributions but also had access to capital account withdrawals to pay down residential mortgages, among other reasons.  Intent notwithstanding, the expectation that some portion of partnership income would flow steadily to the

(continued...)

behalf of the Grandchildren Trust, the trustee was allocated its proportionate share of the dividends paid each year. Because the Grandchildren Trust had no other source of income, distributions of partnership income to the trustee were necessary to satisfy the Grandchildren Trust's annual Federal income tax liabilities. The Court holds that the necessity of a partnership distribution in these circumstances comes within the purview of the fiduciary duties imposed on the general partners. Therefore, the general partners were obligated to distribute a portion of partnership income each year to the trustee.

The partnership agreement provided that after allocating partnership net profits and losses, and every item of income, gain, loss, deduction, and credit proportionately among the partners in accordance with their respective percentage interests consistent with section 704, distributions of net cash flow shall be made to the partners in proportion to their respective percentage interests. Because distributions must be pro rata, any distribution to the trustee triggered proportionate distributions to the other partners. The estate has thus proven that, on the date of each gift, some portion of partnership income was expected to flow

_____

[9](...continued)
limited partners is supported by the general partners' fiduciary duties owed to the trustee of the Grandchildren Trust as discussed infra.

steadily to the limited partners. Indeed, the record shows that the partnership made distributions pro rata from dividends paid each year at issue.[10]

Finally, the Court holds that, with respect to the third prong, the portion of income flowing to the limited partners could be readily ascertained. The partnership held publicly traded, dividend-paying stock and was thus expected to earn dividend income each year at issue. Because the stock was publicly traded, the limited partners could estimate their allocation of quarterly dividends on the basis of the stock's dividend history and their percentage ownership in the partnership.

On the basis of these specific facts and circumstances, the Court finds that the limited partners received a substantial present economic benefit sufficient to render the gifts of limited partnership interests present interest gifts on the date of each gift. Accordingly, the gifts qualify for the annual gift tax exclusion under section 2503(b).

---

[10]The Court notes that, unlike the taxpayers in Hackl and Price, decedent, in his fiduciary capacity as general partner of the partnership, made distributions each year at issue and was required to do so. See Hackl v. Commissioner, 118 T.C. 279, 298 (2002), aff'd, 335 F.3d 664 (7th Cir. 2003); Price v. Commissioner, T.C. Memo. 2010-2.

The Court has considered the parties' arguments and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.